## STATE OF CONNECTICUT *v.* AARON B. CUTLER
### (SC 18060)

Rogers, C. J., and Palmer, Vertefeuille, Zarella and McLachlan, Js.

Argued March 18—officially released September 1, 2009

*Richard Emanuel,* with whom was *Eugene J. Riccio,* for the appellant (defendant).

*Timothy J. Sugrue,* senior assistant state's attorney, with whom, on the brief, were *David I. Cohen,* state's attorney, and *Nancy Dolinsky,* senior assistant state's attorney, for the appellee (state).

*Opinion*

VERTEFEUILLE, J. The defendant, Aaron B. Cutler, appeals[1] from the judgment of conviction, rendered after a jury trial, of unlawful restraint in the first degree in violation of General Statutes § 53a-95.[2] The defendant claims on appeal that the trial court improperly: (1) admitted certain prior misconduct evidence after concluding that its probative value outweighed its prejudicial effect; (2) declined to instruct the jury to apply a preponderance of the evidence standard to determine whether the prior misconduct occurred; and (3) marshaled the evidence in its jury instruction by referencing only the state's prior misconduct evidence and not the defendant's countervailing evidence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Prior to March, 2005, the defendant and Jill Kolton were involved in a tumultuous romantic relationship that spanned approximately one year. Despite the rocky nature of their relationship, they moved in together in a house in Stamford in December, 2004. Their relationship continued to deteriorate, however, and by the end of March, 2005, it had ended. On March 21, 2005, the defendant signed a lease for a separate property, which became effective April 1, 2005. On March 22, 2005, the defendant and Kolton became engaged in a heated argument, and after the defendant left their house, Kolton changed the locks on all of the doors.

Around 3 p.m. on March 25, 2005, Kolton was working at home engaged in a telephone conference call when

---

[1] The defendant appealed from the judgment of conviction to the Appellate Court, and, upon the defendant's motion, we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[2] General Statutes § 53a-95 (a) provides: "A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury."

the defendant appeared unexpectedly at the front door, intending to pack his personal belongings. Because Kolton had changed the locks on all of the doors without informing the defendant, he was unable to enter the house. Kolton went to the door and told the defendant that she would not let him into the house because she was on a telephone conference call. After immediately protesting and demanding that he be let into the house, the defendant left the property. When her conference call ended, Kolton telephoned the defendant and left him a voicemail asking him to call her back. Around 4:10 p.m., the defendant telephoned Kolton and told her that he wanted to come over to pack his belongings. While he was on the telephone with her, the defendant pulled his car into the driveway. Kolton, seeing the defendant outside, acquiesced to his request to enter the house and let him in.

When he entered the house, the defendant went straight into the kitchen to begin packing boxes, and Kolton went down the hallway to her home office. Shortly thereafter, Kolton entered the kitchen, and she and the defendant began to argue over when the defendant was going to leave. Kolton asked the defendant to leave by 7 p.m., but the defendant replied that he "could stay until however [late] he wanted" in order to finish packing his belongings. The defendant then started cursing at Kolton and physically moved toward her as if to grab her. Kolton quickly moved out of the kitchen and toward the front door, where she opened the front door and told the defendant that he had to leave.

The defendant then grabbed Kolton, picked her up, and put her down on the floor in the living room.[3] The

---

[3] Kolton is five feet, one inch tall and weighed ninety-two pounds at the time of the incident. The defendant, on the other hand, is five feet, eleven inches tall and weighed approximately 180 pounds at the time of the incident.

carpeting there was extremely coarse. The defendant held Kolton down on the floor while she was kicking and screaming and acting, in the defendant's words, "hysterical." He admittedly "pinned her down on the [floor] with [his] knees on her shoulders and [he] held her arms with each one of [his] arms." The defendant then told Kolton that he simply wanted to pack and remove his belongings from the house. The defendant released Kolton[4] and went back into the kitchen in order to continue packing his belongings.[5]

Kolton got up from the floor and went out onto the balcony in order to catch her breath. She then walked back into the house to the home office, where she retrieved a cordless telephone. With the telephone in hand, she walked down the hallway, through the master bedroom, and into the master bathroom, locking both the bedroom and bathroom doors. Kolton then called 911 and told the operator that she had been attacked by the defendant. She stayed on the telephone with the 911 operator until police officers entered the house several minutes later. The officers spoke with both Kolton and the defendant about what had occurred and, thereafter, the defendant was arrested and charged with one count of unlawful restraint in the first degree in violation of § 53a-95[6] and one count of assault in the third degree in violation of General Statutes § 53a-61 (a) (1).[7]

---

[4] The defendant testified that the entire incident lasted approximately sixty seconds.

[5] Kolton testified that before the defendant picked her up and put her on the floor in the living room, the defendant grabbed her forcefully by her hair to pull her back in the house and, with an open fist, punched her in the forehead. He then "tackled" her to the floor as she was trying to escape him by moving toward the balcony doors. She struggled to get away, and when the defendant let her go, she got up and told him to leave. Kolton testified that the defendant then picked her up and put her down on the coarse rug in the living room again, forcefully holding her down and choking her so that she was prevented from breathing.

[6] See footnote 2 of this opinion.

[7] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when: (1) With intent to cause physical

At trial, the state presented the testimony of the police officers who responded to the March 25, 2005 incident, as well as the two written statements that Kolton gave the police. The state also presented the testimony of Kolton herself. In addition to her testimony about the incident for which the defendant was being charged, Kolton also testified, over the defendant's objection, to three prior acts of uncharged misconduct allegedly committed by the defendant against her.

During his case, the defendant testified that he had attempted to end his relationship with Kolton permanently but that she would not concede to the fact that it was over. The defendant also claimed that on the day of the incident for which he was on trial, he had acted in self-defense, that is, that he had pinned Kolton on the floor only after she had run at him hysterically and had hit him on the side of his shoulders.

After a four day trial, the jury returned a verdict finding the defendant not guilty of assault in the third degree but guilty of unlawful restraint in the first degree. The trial court thereafter denied the defendant's post-verdict motions for judgment of acquittal and for a new trial and rendered judgment in accordance with the jury's verdict. This appeal followed. See footnote 1 of this opinion.

I

The defendant first claims that the trial court improperly admitted the prior misconduct evidence after concluding that its probative value outweighed its prejudicial effect. Specifically, the defendant asserts that the prior uncharged misconduct evidence had minimal probative value because it consisted of mere uncorroborated allegations by Kolton, the complainant in the

injury to another person, he causes such injury to such person or to a third person . . . ."

present case. In response, the state claims that the trial court's admission of the prior misconduct evidence was properly within its broad discretion. We agree with the state.

The following undisputed additional facts and procedural history are relevant to our resolution of this claim. Before trial, the state filed a notice of uncharged misconduct, informing the defendant of its intention to rely on prior uncharged misconduct evidence. Specifically, the state sought to introduce evidence of four prior acts of uncharged physical violence by the defendant against Kolton to show that the defendant had intended to act as he did against Kolton, and that no mistake or accident had occurred. The four acts occurred in late August, 2004, late January, 2005, March 12, 2005, and March 22, 2005. The state represented to the trial court that on each of these dates, the following occurred: (1) in late August, 2004, the defendant became angry with Kolton, knocked her to the floor and punched holes in the door of the room they were in; (2) in late January, 2005, the defendant and Kolton were arguing when the defendant grabbed Kolton by the hair, dragged her into the bedroom, covered her face with a pillow and threatened her; (3) on March 12, 2005, the defendant and Kolton were arguing when the defendant pinned Kolton down on the couch, restrained her, threatened her and smashed his palm into her face, cutting the bridge of her nose; and (4) on March 22, 2005, the defendant and Kolton were arguing when the defendant struck Kolton with a suitcase, restrained her on the floor with his legs, covered her face with his hands and threatened her. The state asserted that it intended to rely solely on Kolton's own testimony for proof of these acts.

The defendant objected to the admission of this prior misconduct evidence and claimed to be entitled to an evidentiary hearing during which, after the introduction of the state's evidence as well as countervailing evi-

dence from the defendant, the trial court should determine whether the prior acts actually occurred. The defendant also claimed that the trial court would have to make that decision employing the evidentiary standard of clear and convincing evidence.[8] The trial court allowed the defendant to make a proffer as to the evidence he would introduce at an evidentiary hearing to rebut the state's prior misconduct evidence. The defendant proffered his own testimony and that of his mother, as well as inconsistent statements by Kolton in e-mails and police reports. The defendant also claimed that the prior misconduct evidence was more prejudicial than probative because the prior uncharged acts were not only close in time and dramatically similar to the charged act, but also were not adequately supported by persuasive evidence.

The trial court disagreed with the defendant and denied his request for an evidentiary hearing. The court concluded that the admissibility of evidence is determined not after such a hearing, but instead after the trial court's consideration of the following two part test: (1) the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions to the general rule barring the admission of prior misconduct evidence; and (2) the probative value of the evidence must outweigh any prejudicial effect of the evidence. Because the trial court determined that the evidence was relevant to the defendant's intent as well as to the absence of mistake or accident,[9] which are recognized exceptions to the general rule barring the admission of prior misconduct evidence, and because it concluded that the probative value of the

---

[8] Later in the trial, the defendant changed his claim and asserted that the proper standard by which the trial court should decide whether the misconduct had occurred is the preponderance of the evidence standard. We consider his claim on the basis of his revised, and not original, assertion.

[9] The trial court recognized that the intent of the defendant was at issue with regard to the charge against the defendant of assault in the third degree.

evidence outweighed the prejudicial effect of the evidence, the trial court admitted the state's evidence regarding three of the four prior misconduct acts. The trial court found that the August, 2004 incident was remote in time and not relevant to the case at hand and, accordingly, it barred the admission of that evidence. Significantly, after admitting the state's prior misconduct evidence, the court stated its intent to offer a limiting instruction to the jury in order to minimize any prejudicial effect the evidence might have; the instruction would highlight the limited and specific purpose for which the evidence was to be properly considered by the jury.[10]

We begin our analysis of the defendant's claim that the trial court improperly admitted the state's prior uncharged misconduct evidence by addressing the well settled standard of review. "Evidence of a defendant's uncharged misconduct is inadmissible to prove that the defendant committed the charged crime or to show the predisposition of the defendant to commit the charged crime. . . . Exceptions to this rule have been recognized, however, to render misconduct evidence admis-

---

[10] The trial court's statement as to the limiting instruction it intended to offer provided in relevant part: "I do intend to offer a limiting instruction, if requested, and this is offered also to lessen any of the prejudicial impact, which is as follow[s]: And I'll give it to counsel later, but the evidence offered by the state of the alleged prior misconduct of the defendant has been admitted for [a] limited purpose. The evidence is not being admitted to prove that the defendant is guilty of the crimes with which he is charged in the present case. Nor can the evidence be used to suggest that the defendant has a bad character or a propensity for criminal behavior. Such evidence is being admitted solely to show or establish the existence of the intent of the defendant, which is a necessary element of the crimes charged. You may consider such evidence if you believe it, and further find it logically and rationally supports the issue for which it is being offered by the state, but only as it may bear on the issue of intent. On the other hand if you don't believe such evidence or even if you do, if you find that it does not logically and rationally support the issue for which it is being offered by the state, namely the defendant's intent, then you may not consider that testimony for that purpose. So that would be the limiting [instruction]."

sible if, for example, the evidence is offered to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime. . . . To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, we have adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence. . . . Since the admission of uncharged misconduct evidence is a decision within the discretion of the trial court, we will draw every reasonable presumption in favor of the trial court's ruling. . . . We will reverse a trial court's decision only when it has abused its discretion or an injustice has occurred." (Citations omitted; internal quotation marks omitted.) *State* v. *Millan*, 290 Conn. 816, 830–31, 966 A.2d 699 (2009).

Although the defendant contends that the admission of the state's misconduct evidence was improper and so harmful as to require reversal of his conviction, he does not contend that the evidence was irrelevant.[11] Instead, the defendant claims that the trial court abused its discretion when it improperly determined that the state's prior misconduct evidence was more probative than prejudicial. Specifically, the defendant asserts that the probative value of the evidence was slight because it consisted solely of uncorroborated allegations by Kolton. The defendant also asserts that the evidence was extremely prejudicial because it alleged acts that were similar or identical to the charged act. We disagree.

"We consistently have indicated that [t]he primary responsibility for . . . determin[ing] whether [prior

---

[11] Indeed, in his brief before this court, the defendant concedes that the trial court properly determined that the state's misconduct evidence was relevant to the issue in dispute at trial, namely, whether the defendant acted intentionally and without mistake or accident.

misconduct] evidence is more probative than prejudicial rests with the trial court, and its conclusion will be disturbed only for a manifest abuse of discretion. . . . Moreover, [w]hen the trial court has heard a lengthy offer of proof and arguments of counsel before performing the required balancing test, has specifically found that the evidence was highly probative and material, and that its probative value significantly outweighed the prejudicial effect, and has instructed the jury on the limited use of the evidence in order to safeguard against misuse and to minimize the prejudicial impact . . . we have found no abuse of discretion . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *McKenzie-Adams*, 281 Conn. 486, 531–32, 915 A.2d 822, cert. denied, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007).

We emphasize that "the care with which the [trial] court weighed the evidence and devised measures for reducing its prejudicial effect militates against a finding of abuse of discretion." (Internal quotation marks omitted.) *State* v. *Beavers*, 290 Conn. 386, 406, 963 A.2d 956 (2009). In the present case, the state presented an offer of proof as to the anticipated testimony of Kolton, and the trial court heard lengthy oral arguments from both the state and the defendant with respect to the probative value versus the prejudicial effect of this testimony. The trial court concluded that the prior misconduct evidence was extremely probative because the prior acts were not remote in time and were similar in nature—that is, the acts began with an argument between the defendant and Kolton and then escalated when the defendant reacted with some form of physical violence. Significantly, in coming to this conclusion, the trial court relied not only on the parties' oral arguments and offers of proof, but also on well settled case law.[12]

---

[12] Specifically, the trial court relied on the Appellate Court's decision in *State* v. *Erhardt*, 90 Conn. App. 853, 860–61, 879 A.2d 561, cert. denied, 276 Conn. 906, 884 A.2d 1028 (2005), wherein the Appellate Court concluded

Moreover, in an attempt to minimize any prejudice that might arise from the admission of the prior misconduct evidence, the trial court gave limiting instructions to the jury regarding the very narrow purpose for which it could consider the evidence. See footnote 10 of this opinion. The trial court instructed the jury during the trial, both between Kolton's direct and cross-examinations, and again at the close of trial in its final jury charge, that Kolton's testimony concerning the prior uncharged misconduct acts was admitted "solely to show or establish the existence of the intent of the defendant . . . ." We are mindful that a trial court's limiting instructions about the restricted purpose for which the jury may consider prior misconduct evidence "serve to minimize any prejudicial effect that such evidence otherwise may have had . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *James G.*, 268 Conn. 382, 397–98, 844 A.2d 810 (2004); see also *State* v. *Beavers*, supra, 290 Conn. 406–408 (use of limiting instructions by trial court about prior misconduct evidence is significant in concluding that trial court properly determined said evidence to be more probative than prejudicial). "[I]n the absence of evidence to the contrary, we presume that the jury properly followed those instructions."[13] (Internal quotation marks omitted.) *State* v. *James G.*, supra, 398. Accordingly, because, after a lengthy offer of proof and oral argument by both parties, the trial court specifically found that the evidence was more probative than prejudicial and

that similarity between acts as well as closeness in time were important factors in determining the probative value of prior misconduct evidence.

[13] Indeed, we find it significant that the jury found the defendant not guilty of assault in the third degree—the very charge for which the prior misconduct evidence was admitted. See, e.g., *State* v. *Malon*, 96 Conn. App. 59, 71, 898 A.2d 843 ("[t]he fact that the jury found the defendant not guilty of two of the four charges indicates that the admission of the evidence of misconduct did not so prejudice the jury that it could not treat the defendant fairly"), cert. denied, 280 Conn. 906, 907 A.2d 93 (2006); see also footnote 9 of this opinion.

gave the jury limiting instructions as to its proper consideration of the evidence; see *State* v. *McKenzie-Adams*, supra, 281 Conn. 532; we conclude that the trial court did not abuse its discretion by admitting Kolton's testimony concerning the defendant's three incidences of prior uncharged misconduct.

## II

The defendant next claims that the trial court improperly declined to instruct the jury to apply a preponderance of the evidence standard as to its consideration of the prior misconduct evidence. Specifically, the defendant asserts that the trial court's limiting instruction violated the defendant's federal and state due process rights to a fair trial because the jury effectively was allowed to draw inferences in support of proof of an essential element of the charged crime—namely, the defendant's intent—from prior uncharged misconduct, without first having to find by a preponderance of the evidence that the defendant had committed the misconduct. In response, the state claims that case law does not require the jury to find the existence of a prior act of misconduct by a preponderance of the evidence before considering it for a proper purpose. Instead, the state asserts that the jury need only reasonably conclude that the prior act of misconduct occurred. We agree with the state.

The following undisputed additional facts and procedural history are relevant to our resolution of this claim. After the trial court ruled that the state's prior misconduct evidence was admissible to prove the intent of the defendant, or his lack of mistake or accident, with regard to the charge of assault in the third degree, the trial court informed the parties that it would offer a limiting instruction to the jury upon request. See footnote 10 of this opinion. The purpose of this limiting instruction was to minimize any prejudicial effect that

the admission of the prior misconduct evidence might have. The defendant thereafter submitted a written request to charge wherein he asked that jurors be instructed as to the prior misconduct evidence as follows: "You may consider such evidence if you believe it and further find it logically, rationally and conclusively supports the issue[s] for which it is being offered by the state, but only as it may bear here on the issue of intent."[14] Subsequently, however, during the charging conference with the court, the defendant orally requested that the trial court instruct the jury that it was required to make a preliminary finding by a preponderance of the evidence that the prior acts of misconduct in fact had occurred.

The trial court denied the defendant's oral request to include the preponderance of the evidence standard in the jury instructions, determining that this court's conclusion in State v. Aaron L., 272 Conn. 798, 865 A.2d 1135 (2005), "militates against [the defendant's] argument." Accordingly, the trial court, consistent with the defendant's written request to charge, instructed the jury as follows: "You may consider such evidence if you believe it, and further find that it logically and rationally supports the issue for which it is being offered by the state, but only as it may bear on the issue of intent. On the other hand, if you don't believe such evidence, or even if you do, if you find that it does not logically and rationally support the issue for which [it] is being offered by the state, namely the defendant's intent, then you may not consider the testimony for any purpose."[15] The defendant properly took exception to the trial court's charge regarding the prior misconduct evidence.

---

[14] This instruction is in accordance with the manual on selected criminal jury instructions in the state. See J. Pellegrino, Connecticut Selected Jury Instructions: Criminal (3d Ed. 2001) § 2.25.

[15] The trial court gave these same instructions to the jury twice, once after Kolton's direct examination and again during its final jury charge.

We begin with the well established standard of review governing the defendant's challenge to the trial court's jury instruction. "Our review of the defendant's claim requires that we examine the [trial] court's entire charge to determine whether it is reasonably possible that the jury could have been misled by the omission of the requested instruction. . . . While a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored, a [trial] court need not tailor its charge to the precise letter of such a request. . . . If a requested charge is in substance given, the [trial] court's failure to give a charge in exact conformance with the words of the request will not constitute a ground for reversal. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . Additionally, we have noted that [a]n [impropriety] in instructions in a criminal case is reversible [impropriety] when it is shown that it is reasonably possible for [improprieties] of constitutional dimension or reasonably probable for nonconstitutional [improprieties] that the jury [was] misled." (Citations omitted; internal quotation marks omitted.) *State* v. *Aviles*, 277 Conn. 281, 309–10, 891 A.2d 935, cert. denied, 549 U.S. 840, 127 S. Ct. 108, 166 L. Ed. 2d 69 (2006).[16]

Our resolution of the defendant's claim is guided by our recent opinion in *State* v. *Aaron L.*, supra, 272 Conn.

---

[16] The defendant contends on appeal that his claim of instructional impropriety is one of constitutional dimension. We disagree. "[A]s a general rule, the failure of the trial court to give a limiting instruction concerning the use of evidence of prior misconduct is not a matter of constitutional magnitude. . . . *State* v. *Ortiz*, 40 Conn. App. 374, 381, 671 A.2d 389, cert. denied, 236 Conn. 916, 673 A.2d 1144 (1996). If the failure to give any limiting instruction is not of constitutional magnitude, it would follow that the claimed failure to give an adequate limiting instruction likewise is not of constitutional magnitude." (Internal quotation marks omitted.) *State* v. *Dews*, 87 Conn. App. 63, 75, 864 A.2d 59, cert. denied, 274 Conn. 901, 876 A.2d 13 (2005).

819–20, wherein the defendant claimed that because of the highly prejudicial nature of prior misconduct evidence, in cases where a party seeks to introduce such evidence, the trial court should, before admitting such evidence, be required to find, by the clear and convincing evidence standard of proof, that the prior misconduct had in fact occurred. In considering this claim, we found the United States Supreme Court's opinion in *Huddleston* v. *United States*, 485 U.S. 681, 685, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988), to be persuasive. "In *Huddleston*, the defendant appealed from his conviction of one count of possessing stolen property in interstate commerce. Id., 682–84. The trial court allowed the jury to hear evidence regarding two prior transactions in which the defendant either had sold or had attempted to sell similar stolen goods. Id., 683. . . . The defendant claimed that the trial court should have been required to make a preliminary finding that the government had proved the prior misconduct by a preponderance of the evidence before it submitted the evidence to the jury. Id., 682." (Citations omitted.) *State* v. *Aaron L.*, supra, 821–22.

The United States Supreme Court, in considering the defendant's claim, "explained that the defendant's position was inconsistent with the Federal Rules of Evidence because those rules establish the broad principle that relevant evidence—evidence that makes the existence of any fact at issue more or less probable—is admissible unless the [r]ules provide otherwise. . . . [T]he trial judge [can] exclude relevant evidence if, among other things, its probative value is substantially outweighed by the danger of unfair prejudice. [The rules] address specific types of evidence that have generated problems. Generally, [the] . . . [r]ules do not flatly prohibit the introduction of such evidence but instead limit the purpose for which it may be introduced. . . . The text contains no intimation, however,

that any preliminary showing is necessary before such evidence may be introduced for a proper purpose. If offered for such a proper purpose, the evidence is subject only to general strictures limiting admissibility . . . . [*Huddleston* v. *United States*, supra, 485 U.S. 687–88]." (Internal quotation marks omitted.) *State* v. *Aaron L.*, supra, 272 Conn. 822–23. Accordingly, the Supreme Court concluded that "[g]iven [the] evidence, [because] the jury *reasonably could have concluded* that [the prior acts of misconduct had occurred] . . . the trial court . . . properly allowed the evidence to go to the jury." (Emphasis added.) *Huddleston* v. *United States*, supra, 691.

We acknowledge that in *Huddleston*, as in *Aaron L.*, the issue before the court was one of admissibility of prior misconduct evidence, whereas in the present case, the issue is one regarding the content of jury instructions concerning properly admitted prior misconduct evidence. The distinction between these two issues is significant because it highlights the difference between the judge's role as evidentiary gatekeeper and the jury's role as fact finder.[17] In dicta, the Supreme Court noted these distinct roles in *Huddleston*: "[I]n determining whether there is sufficient evidence to introduce an act of prior misconduct, the trial court neither weighs

[17] We are mindful that a trial court, in considering whether there is evidence from which the jury reasonably could conclude that the defendant actually committed the prior act of misconduct, acts as an evidentiary gatekeeper when considering the admissibility of such evidence. *State* v. *Ritrovato*, 280 Conn. 36, 51–52, 905 A.2d 1079 (2006). "[A] [trial] court maintains the obligation to ensure [only] that a witness' testimony meets the *minimum* standard of credibility necessary to permit a reasonable person to put any credence in that testimony." (Emphasis added.) *State* v. *Weinberg*, 215 Conn. 231, 243, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990); see also *State* v. *Ritrovato*, supra, 51–52. Moreover, as a gatekeeper, the trial court also considers whether evidence reasonably supports the finding for which it is offered. See *State* v. *Schiappa*, 248 Conn. 132, 163 n.39, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999).

credibility nor makes a finding that the [g]overnment has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether *the jury* could reasonably find the conditional fact . . . by a preponderance of the evidence." (Emphasis in original; internal quotation marks omitted.) *State* v. *Aaron L.*, supra, 272 Conn. 822, quoting *Huddleston* v. *United States*, supra, 485 U.S. 690. We are not persuaded, however, that this distinction prevents us from employing our well reasoned conclusion in *Aaron L.* as guidance in the present case. Significantly, our reliance in *Aaron L.* on *Huddleston* is not stymied by the Supreme Court's statement, in dicta, regarding whether the jury could find "by a preponderance of the evidence" whether the act had occurred. Like our focus in *Aaron L.*, the Supreme Court's focus in *Huddleston* was on the question of admissibility; accordingly, its reference to the jury's finding was not essential to its conclusion on the admissibility of prior misconduct evidence, and is not binding. See, e.g., *State* v. *Hafford*, 252 Conn. 274, 314 n.21, 746 A.2d 150 ("[t]he language . . . was dict[um] and is not binding on us now"), cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000). We are not persuaded that such a standard is necessary in a jury instruction, and instead look to our consideration in *Aaron L.* of other factors that supported our conclusion, which are certainly instructive and apply equally as well in the present case.

Specifically, in *State* v. *Aaron L.*, supra, 272 Conn. 823, we examined the ways in which our Code of Evidence already protects parties against any unfair prejudice that might arise from the admission of prior misconduct evidence. In particular, we identified the sections of the Code of Evidence that provide this protection, including, but not limited to, § 4-5 (b), which requires that prior misconduct evidence be offered for

a proper purpose, § 4-1, which requires that prior misconduct evidence be relevant to an element in issue, and § 4-3, which requires the trial court to determine whether the probative value of the evidence is outweighed by its potential for unfair prejudice. Id. We also found significant "the limiting instructions the trial court is required to give the jury under § 1-4 [of the Connecticut Code of Evidence] that the evidence is to be considered only for the proper purpose for which it was admitted." Id. We concluded that following application of these requirements, "whatever inferences should be drawn from the defendant's prior [mis]conduct are for the *jury* to determine." (Emphasis in original.) Id., 824. Accordingly, "we decline[d] to adopt a rule requiring that the trial court make a preliminary finding by clear and convincing evidence that prior misconduct occurred before submitting that evidence to the jury. Thus, once a trial court determines that an act of prior misconduct is material and relevant to the charges at trial, and that its probative value outweighs its prejudicial effect, the evidence is admissible." Id.

Thus, our conclusion in *State* v. *Aaron L.*, supra, 272 Conn. 828, implicitly rejects the notion that any particular standard of proof is necessary in a trial court's jury instructions regarding prior misconduct evidence, and makes clear that prior misconduct evidence may be considered by the jury for a proper purpose if "there [is] evidence from which the jury reasonably could . . . [conclude]" that the prior act of misconduct occurred and that the defendant was the actor. Where the admission of prior misconduct evidence depends on the trial court's determination that there is sufficient evidence from which the jury reasonably could conclude that the prior acts of misconduct occurred and that the defendant was the actor; see id.; we see no reason to impose on trial courts a jury instruction that requires jurors to consider the properly admissible prior

misconduct evidence at a higher standard. See, e.g., *State* v. *O'Neill*, 200 Conn. 268, 274–75, 511 A.2d 321 (1986) (where prior misconduct evidence is properly admitted, trial court does not have to determine by heightened standard that prior acts actually occurred and jury is properly left to determine "their commission and consequent weight"). Accordingly, we conclude that it is not necessary that a trial court instruct the jury that it must find, by a preponderance of the evidence, that prior acts of misconduct actually occurred at the hands of the defendant.[18] Instead, a jury may consider prior misconduct evidence for the proper purpose for which it is admitted if there is evidence from which the jury reasonably could conclude that the defendant actually committed the misconduct.

In the present case, the trial court instructed the jury that it could consider the state's prior misconduct evidence if it "believe[d]" that evidence and found that it "logically and rationally" supported the issue for which it was being offered. The defendant claims that by using the word "believe," the trial court improperly replaced the preponderance of the evidence standard that is necessary for the consideration of prior misconduct evidence. We disagree. The trial court properly determined that there was evidence from which the jury reasonably could conclude that the defendant actually committed the prior acts of misconduct, and its use of the word "believe" comports with the requirement that a jury may consider prior misconduct evidence if there is evidence from which it reasonably could conclude that the defendant committed the acts.

---

[18] We are also wary of any instruction that would be "potentially confusing to the jury." *State* v. *Lemoine*, 256 Conn. 193, 201, 770 A.2d 491 (2001). A jury instruction requiring juries to apply differing burdens of proof to the state's evidence—that is, a preponderance of the evidence standard for prior misconduct, as well as the beyond a reasonable doubt standard for the facts necessary for conviction—might have such an effect.

In the context of our opinion in *Aaron L.*, it is clear that the trial court's use of the word "believe" is not only correct in law, but also sufficiently guides the jury as to its consideration of the prior misconduct evidence. If the jury believes the prior misconduct evidence, it follows logically that there is evidence from which the jury reasonably could conclude that the defendant committed the prior acts of misconduct.[19]

### III

The defendant's final claim on appeal is that the trial court improperly marshaled the evidence in its jury instruction by referring only to the state's prior misconduct evidence and not the defendant's countervailing evidence. Specifically, the defendant asserts that the trial court's instruction violated his constitutional right to a fair trial in this regard. The defendant concedes that he did not take exception to the trial court's prior misconduct jury instruction on this ground and requests that we review the claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine, which is codified at Practice Book § 60-5.[20] In response, the state contends that the defendant's

---

[19] Although we conclude in the present case that the trial court's use of the word "believe" in its jury instruction was proper, we note that the specific language used in *State* v. *Aaron L.*, supra, 272 Conn. 828—namely, that "there [is] evidence from which the jury reasonably could . . . [conclude]" that the prior act of misconduct occurred and that the defendant was the actor—may be of greater assistance to the jury in future instructions regarding the use of prior misconduct evidence.

[20] Practice Book § 60-5 provides in relevant part: "The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law.

"The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . .

"It is the responsibility of the appellant to provide an adequate record for review as provided in Section 61-10."

claim is not reviewable under the second prong of *Golding* because unpreserved claims relating to the trial court's instructions on prior misconduct evidence are not of constitutional magnitude and this case does not present the " 'extraordinary' situation" required for application of the plain error doctrine. We agree with the state.

In support of his claim, the defendant points to the italicized portions of the following jury charge, which was given by the trial court: "The evidence *offered by the state* of the alleged prior misconduct of the defendant has been *admitted* for a limited purpose. Such evidence has not been *admitted* to prove that the defendant is guilty of the crimes with which he is charged in the present case. Nor can the evidence be used to suggest that the defendant has a bad character or propensity for criminal behavior. Such evidence has been *admitted* solely to show or establish the existence of the intent of the defendant . . . ." (Emphasis added.) The defendant further points out that the trial court made no reference in this charge to the evidence that was offered by the defendant to refute the state's evidence.

We first address the reviewability under *Golding* of the defendant's claim. "[I]f a defendant fails to preserve a claim for appellate review, we will not review the claim unless the defendant is entitled to review under the plain error doctrine or the rule set forth in *State* v. *Golding,* [supra, 213 Conn. 239–40]." *State* v. *Spencer,* 275 Conn. 171, 177, 881 A.2d 209 (2005). "A party is obligated . . . affirmatively to request review under these doctrines." *State* v. *Ramos,* 261 Conn. 156, 171, 801 A.2d 788 (2002); see also *State* v. *Waz,* 240 Conn. 365, 371 n.11, 692 A.2d 1217 (1997) ("defendants who seek consideration of unpreserved constitutional claims [on appeal] . . . bear the burden of establishing

their entitlement to such review under the guidelines enumerated in *Golding*").

"Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error only if the following conditions are satisfied: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *DeJesus*, 260 Conn. 466, 472, 797 A.2d 1101 (2002); see also *State* v. *Peeler*, 271 Conn. 338, 359–60, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 121 S. Ct. 94, 163 L. Ed. 2d 110 (2005). "The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Brown*, 279 Conn. 493, 500, 903 A.2d 169 (2006); see also *State* v. *Peeler*, supra, 360.

Although we agree with the defendant that the record is adequate for our review of his claim, we are not persuaded that he has established a violation of constitutional magnitude in satisfaction of the second prong of *Golding*. It is well established that "the failure of the trial court to give a limiting instruction concerning the use of evidence of prior misconduct is not a matter of constitutional magnitude . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Rosario*, 99 Conn. App. 92, 105 n.8, 912 A.2d 1064, cert. denied, 281 Conn. 925, 918 A.2d 276 (2007); see also *State* v. *Dews*, 87 Conn. App. 63, 75, 864 A.2d 59, cert. denied, 274 Conn. 901, 876 A.2d 13 (2005); *State* v. *Ortiz*, 40 Conn. App. 374, 381, 674 A.2d 389, cert. denied, 236 Conn. 916, 673 A.2d 1144 (1996). "If the failure to give any limiting

instruction is not of constitutional magnitude, it would follow that the claimed failure to give an adequate limiting instruction likewise is not of constitutional magnitude." *State* v. *Dews*, supra, 75.

"[J]ust as every claim of evidentiary [impropriety] by the trial court is not truly constitutional in nature . . . every claim of instructional [impropriety] is not truly constitutional in nature. . . . Indeed, it would trivialize the constitution to transmute a nonconstitutional claim into a constitutional claim simply because of the label placed on it by a party or because of a strained connection between it and a fundamental constitutional right. . . . Robing garden variety claims of improper jury instructions concerning evidentiary matters in the majestic garb of constitutional claims does not make such claims constitutional in nature." (Citation omitted; internal quotation marks omitted.) *State* v. *Schiappa*, 248 Conn. 132, 165–66, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999). Accordingly, we conclude that the defendant's unpreserved claim fails to meet the second prong of *Golding*.

The defendant's claim also does not warrant review under the plain error doctrine. See Practice Book § 60-5. The plain error doctrine "is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court *invokes* in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless *requires reversal of the trial court's judgment,* for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . [I]nvocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review." (Citations

omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Kirk R.*, 271 Conn. 499, 507–508 n.14, 857 A.2d 908 (2004); see also *State* v. *Fagan*, 280 Conn. 69, 87, 905 A.2d 1101 (2006) (plain error review is extraordinary doctrine that should be used sparingly), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007).

The defendant has not demonstrated that the impropriety he raises is so clear and so harmful that manifest injustice will result if the judgment is not reversed. Nor has he shown that his claim affects the fairness and integrity of and public confidence in judicial proceedings. We therefore conclude that this is not an occasion requiring the reversal of the trial court's judgment under the plain error doctrine.

The judgment is affirmed.

In this opinion the other justices concurred.