******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* PAUL B.*
(SC 19197)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Vertefeuille, Js.

*Argued September 25—officially released December 23, 2014*

*Glenn W. Falk*, assigned counsel, for the appellant
(defendant).

*Kathryn W. Bare*, assistant state's attorney, with
whom, on the brief, were *Brian Preleski*, state's attor-
ney, and *Kevin J. Murphy*, former supervisory assistant
state's attorney, for the appellee (state).

*Opinion*

McDONALD, J. The defendant, Paul B., was convicted, after a jury trial, of two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2) for touching the intimate parts of two young boys "in a sexual and indecent manner . . . ." The defendant appeals, upon our grant of certification, from the judgment of the Appellate Court, contending that the Appellate Court incorrectly determined that: (1) the trial court properly admitted out-of-court statements of one of the victims through the testimony of a police officer to provide context for the defendant's admission to the conduct underlying the charges against him; (2) the trial court properly admitted out-of-court statements of the victims as examples of their age inappropriate knowledge through the testimony of the state's expert; and (3) the state did not engage in prosecutorial impropriety during closing argument by relying on this testimony.[1] We conclude that the defendant's first claim was not properly preserved and that, even assuming the challenged statements used by the state's expert were improperly admitted, any impropriety was harmless. Finally, we are not persuaded that the defendant was deprived of a fair trial by any purported prosecutorial impropriety. We therefore affirm the judgment of the Appellate Court.

The record reveals the following facts that the jury reasonably could have found. In 2005, DA and DE, half brothers who were then respectively eight and five years old, resided in close proximity to the defendant's home. The defendant met DA and DE when they were playing with another child, SA, whom the defendant occasionally babysat, outside of the defendant's home.

Several weeks after the defendant met DA and DE, he met their parents. DA and DE then began to sleep at the defendant's home when their parents needed a babysitter or when other friends, including SA, were staying overnight at the defendant's house. Shortly thereafter, the defendant injured his foot and was invited by the victims' parents to move into their home.

The defendant frequently shared a bed with DA and DE, both when they slept at the defendant's house and after the defendant had moved into the victims' home. On occasion, the defendant wore only underwear when the children slept with him. He also asked DA not to wear clothes to bed and would remove DE's clothes in his sleep. DA and DE both occasionally felt wetness in the bed or on themselves when they woke up. For example, after the defendant removed DE's clothing, DE would wake up feeling something wet "on [his] private." Once, DE woke up and felt wetness on his penis and saw the defendant's face near his midsection. The defendant also touched and rubbed both DE's and DA's nipples, penises, and buttocks on multiple occa-

sions when he shared a bed with them. There also were times when DE would feel the defendant suck on his nipples right before he would fall asleep and he once felt the defendant lick his neck. When the children took showers, the defendant occasionally stayed in the bathroom and, when they were finished in the shower, he would dry them off with a towel and help them put on their underwear. On at least one occasion, the defendant touched DA "in a private place" while drying him off. The defendant told both DA and DE that they could not tell their parents about the defendant touching them.

In June, 2008, DE disclosed to his grandmother that the defendant had touched him inappropriately. After the grandmother informed other family members about what DE had said, the defendant was asked to leave the victims' home. In August, 2008, Officer Kim Parrott of the Plymouth Police Department received a telephone call reporting the alleged sexual assault. Approximately one week later, Diane Edell, a licensed clinical social worker, conducted a forensic interview of DE, for which Parrott was present. Shortly thereafter, Parrott interviewed the defendant about the conduct alleged by DE. After Parrott's interview of the defendant, Edell conducted a forensic interview of DA, for which Parrott also was present.

At trial, the state called numerous witnesses to testify regarding the aforementioned facts, including DE and DA, who were then respectively ten and thirteen years old. SA, who was not a victim in this case, also testified to corroborate the victims' testimony regarding the assaults that were committed in the defendant's home and to offer propensity evidence of similar acts that the defendant had committed on him. Parrott testified regarding the defendant's response after being confronted with DE's allegations. Over the defendant's objection, Parrott was permitted to testify as to the specific statements of DE to which the defendant responded. Edell offered an expert opinion regarding the conduct of child abuse victims. Over the defendant's objection, Edell was permitted to testify regarding statements elicited in the forensic interviews with DA and DE that she viewed as evidencing age inappropriate language consistent with the conduct of such victims.

The defendant testified in his own defense and maintained that he had no recollection of touching the victims in a sexual manner. He acknowledged, however, drying the victims off with a towel after they would take showers and sleeping with them in their bed.

The jury returned a verdict of guilty of two counts of risk of injury to a child, but acquitted the defendant of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2). The trial court rendered judgment in accordance with the verdict.

The defendant appealed from the judgment of conviction to the Appellate Court, challenging the admission of the statements of the victims introduced through Parrott and Edell as inadmissible hearsay, as well as the prosecutor's comments on that evidence in closing argument. The Appellate Court rejected the defendant's claims and affirmed the judgment of the trial court. See *State* v. *Paul B.*, 143 Conn. App. 691, 693, 70 A.3d 1123 (2013). This certified appeal followed.

I

We begin with the defendant's challenge to the Appellate Court's conclusion that the trial court properly admitted out-of-court statements made by DE attesting to certain acts by the defendant through Parrott's testimony. The defendant contends that, although Parrott properly could provide context for the defendant's response to Parrott when the defendant was confronted with those allegations, it was unnecessarily prejudicial for Parrott to testify that DE had made the inculpatory statements in the forensic interview. We conclude that, although the defendant objected at trial to the admission of Parrott's testimony with regard to DE's statements, that objection was based upon a different ground than the one raised in this certified appeal. Because the claim before us was not properly preserved, the defendant is not entitled to a review of the ruling on this basis.

The record reveals the following additional facts. At trial, the defendant objected on hearsay grounds to the state's questioning of Parrott regarding what Parrott had told the defendant when she interviewed him after DE's forensic interview. During an offer of proof outside the presence of the jury, Parrott testified that, during her interview of the defendant, she "told him that DE and DA have disclosed—that only DE was interviewed, and it was disclosed that while [the defendant] was living at his house, that he would sleep in the same bed with the boys, and that he was touching their butt, their private area, licking the private area, licking and playing with the nipples, and DE explained peeing—that he was peeing on them." Parrott then testified that in response, the defendant said: "[W]ell, if the boys said I did that, then maybe I did. I just don't remember." The defendant objected to the admission of this testimony on the grounds that DE's statements were hearsay and that admitting the details of the allegations was prejudicial. The defendant suggested that "getting out the idea that [DA and DE] have made disclosures of a sexual nature that included touching by [the] defendant to the children . . . is broad enough that it still allows the jury to make a determination of the ultimate facts, without submitting details in for the jury . . . ." The court overruled the hearsay objection, concluding that the references to DE's allegations against the defendant were not being offered for their truth, but rather only to

provide context for the defendant's response. The court explained that, in order to put the defendant's statement in context, "[Parrott] must testify accurately as to what specifically she asked him about." The court further concluded that allowing Parrott to testify regarding the details of DE's allegations was not prejudicial because the out-of-court statements described conduct that DE and DA had already testified to at trial. Parrott then testified consistent with the offer of proof. The Appellate Court agreed with the trial court's reasoning. *State v. Paul B.*, supra, 143 Conn. App. 710–11.

By contrast to his hearsay argument at trial, in his brief to this court, the defendant argues that, in order to give context to the defendant's statement, "it would have been sufficient for . . . Parrott to testify that she asked the defendant 'if he had ever licked [the children's] nipples, or touched their chests, had he ever licked their private area, was there any rubbing on the butt.' . . . It was not necessary to add the prejudicial assertions that 'this is what DE had explained in an interview,' and that [Parrott] was 'there [to speak with the defendant] because the boys, DE and DA, had disclosed that—at the time of the interview—that DE had disclosed that [the defendant] had been touching them in their bed—DE and DA.' " In the defendant's view, "[b]y identifying the forensic interview as the source of the allegations, Parrott unfairly conveyed to the jury that she . . . believed DE . . . ." He contends that "the needless repetition of statements from forensic interviews, especially by police officers, unfairly bolsters the state's case and unduly prejudices defendants."[2]

It is apparent from his argument and the authority offered in support thereof that the defendant has challenged on appeal to this court Parrott's identification of the forensic interview as the circumstance in which the out-of-court statements were made and the fact that a police officer had reported the statements being made, rather than the substance of the out-of-court statements themselves. It is equally apparent from the trial court's ruling that it reasonably understood the defendant's arguments as an objection to the substance of DE's statements, not the circumstances under which the statements were made or the reporter of those statements. Indeed, in arguing on appeal that it was improper for Parrott to identify that DE's statements came from an interview, the defendant appears to be making a belated vouching argument to bolster his claim with regard to Edell's testimony regarding the victims' statements. See part II of this opinion. The defendant is conflating two distinct objections. He cites no authority for the proposition that the hearsay objection he made at trial to the admissibility of the *details* of DE's allegations encompasses an improper vouching claim regarding the admissibility of Parrott's testimony as to the *source* of DE's allegations, and our research has found

nothing in support of this point.

We note that the state has not argued that the defendant failed to preserve the claim raised before this court, but instead has defended the merits of the Appellate Court's decision, which only addresses the substance of the statements at issue as nonhearsay. Nonetheless, the preservation requirement is intended to protect, inter alia, judicial resources. See *State* v. *Calabrese*, 279 Conn. 393, 408 n.18, 902 A.2d 1044 (2006) (preservation requirements " 'serve to alert the trial court to potential error while there is still time for the court to act' "). We therefore will decline to address an unpreserved evidentiary claim even in the absence of such an objection by the opposing party. Accordingly, we conclude that the defendant is not entitled to review of the claim raised on appeal. See *State* v. *Jorge P.*, 308 Conn. 740, 753, 66 A.3d 869 (2013) ("In order to preserve an evidentiary ruling for review, trial counsel must . . . articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted." [Internal quotation marks omitted.]).

## II

We next turn to the defendant's claim that the Appellate Court improperly affirmed the trial court's admission of the victims' out-of-court statements through the testimony of the state's expert, Edell, as nonhearsay. The defendant contends that allowing Edell to testify as to the victims' out-of-court statements as a basis for her expert opinion that they had used age inappropriate language consistent with child abuse victims constituted an impermissible backdoor to using the statements for their truth.[3] He further contends that it was unnecessary for Edell to quote the victims' out-of-court statements in order to support her opinion and that doing so unfairly bolstered the victims' trial testimony and added a significant noncumulative detail to that testimony. The defendant claims that this error caused harm that could not be remedied by a limiting instruction. We conclude that, even assuming arguendo that the admission of the statements was improper, it was not harmful because that evidence did not substantially affect the verdict in this case.

The following additional facts are relevant to this claim. Edell testified regarding methods of interviewing child sexual assault victims and the dynamics of child sexual abuse. On redirect examination, the prosecutor asked Edell: "What were the factors that you were particularly observing in regard to DA and to DE and SA . . . that you were looking for to try to, you know, make sure that this was a valid disclosure?" Edell responded first by discussing general factors regarding

disclosures by child victims of sexual assault, without referencing either victim or stating that either victim demonstrated any particular factor. Edell mentioned that, when a child exhibits age inappropriate sexual knowledge, it may be indicative of a valid disclosure of sexual abuse. The prosecutor asked for an example of age inappropriate sexual knowledge that DE or DA displayed during Edell's interview of them. She replied: " 'He put his tongue in my belly button.' That's not something that eleven year old kids know about. 'He sucked on my nipples.' DE talked about his licking his penis." The defendant then objected to the admission of these statements on the basis of hearsay.

After overruling the defendant's objection, the trial court immediately gave a limiting instruction. In its final jury charge, the court again instructed the jury to consider evidence that had been admitted for a limited purpose only for that purpose and for no other purpose, and, at the defendant's request, specifically noted that the testimony that "DE reported [that] the defendant licked his penis" was admitted for the limited purpose of providing context to Edell's testimony and was not to be considered for its truth.

As this court has previously explained: "[T]o the extent that we assume impropriety in the trial court's evidentiary [rulings], [w]hen an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . [W]hether [the improper admission of a witness' testimony] is harm[ful] in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harm[ful] should be whether the jury's verdict was substantially swayed by the error." (Internal quotation marks omitted.) *State* v. *Osimanti*, 299 Conn. 1, 18–19, 6 A.3d 790 (2010).

We conclude that the defendant did not prove harm in the present case. The state presented a strong case. Importantly, rather than unequivocally denying that he had engaged in the conduct alleged, the defendant made numerous inculpatory statements in his own testimony and to others that were presented to the jury. Parrott testified that the defendant had admitted in his interview that "maybe" he had engaged in the conduct that provided the basis for the crimes for which he was convicted, but did not remember doing so. Similarly, when the defendant was asked during his direct examination whether he had ever touched DA inappropri-

ately, he responded: "Not to my knowledge—well, unless I was drying him off with the towel." Furthermore, the defendant admitted that it was "possible" that, while sleeping in bed with the children, he had rubbed DE's buttocks for "a couple of seconds" and with "[n]o particular purpose." And when asked whether he "would rub DE's penis," the defendant responded, "I doubt that." The jury reasonably would have concluded that a person with an ordinary memory would remember whether he had sexually touched young children. The fact that the defendant proved to have a good memory of many other far less consequential events during both his interview with Parrott and his own testimony demonstrated that the defendant did not suffer from an impairment to his memory.

Additionally, the jury heard detailed descriptions of the defendant's conduct from DA, DE, and SA, rendering Edell's testimony regarding the victims' statements cumulative. For example, DE described how the defendant would "suck . . . [o]n my chest" and that, when he woke up at night, he felt it "right on [his] nipples." DE further described how he woke up one night and felt wetness on his penis and that, at the time, the defendant was facing toward him, with his face near his midsection. Although DE did not use the phrase "[he] licked my penis" in his testimony, the jury could have inferred that fact from his testimony. Furthermore, all three children testified consistently regarding the defendant's conduct and corroborated each other in material respects including the location, nature, and timing of the defendant's touching.

Finally, the court instructed the jury immediately after the admission of Edell's testimony that it was not to consider the out-of-court statements for their truth. "[A] trial court's limiting instructions about the restricted purpose for which the jury may consider [certain] evidence serve to minimize any prejudicial effect that such evidence otherwise may have had . . . ." (Internal quotation marks omitted.) *State* v. *Cutler*, 293 Conn. 303, 314, 977 A.2d 209 (2009), overruled in part on other grounds by *State* v. *Elson*, 311 Conn. 726, 91 A.3d 862 (2014); see also *State* v. *Iban C.*, 275 Conn. 624, 643, 881 A.2d 1005 (2005) ("as a general matter, the jury is presumed to follow the court's curative instructions in the absence of some indication to the contrary" [internal quotation marks omitted]). We also note that "such instructions are far more effective in mitigating the harm of potentially improper evidence when delivered contemporaneously with the admission of that evidence, and addressed specifically thereto." *State* v. *Favoccia*, 306 Conn. 770, 816, 51 A.3d 1002 (2012). In the present case, the trial court gave a limiting instruction immediately following the admission of the contested statements, again during the final jury charge, and, at the defendant's request, specifically addressed the comment that the defendant contends was most

prejudicial.

We are not persuaded by the defendant's argument that the jury's note to the court during its deliberations, which asked whether "licking penis" constitutes penetration, demonstrates that the jury considered Edell's testimony for its truth and therefore necessarily was harmful. Penetration was an element of the sexual assault charge on which the jury returned a verdict of not guilty. Moreover, *State* v. *Miguel C.*, 305 Conn. 562, 579, 46 A.3d 126 (2012), on which the defendant relies, is inapposite in that the testimony improperly admitted in that case was the only way in which the jury learned of an alleged confession by the defendant. This court recognized that "confessions have a particularly profound impact on the jury, so much so that we may justifiably doubt [the jury's] ability to put them out of mind even if told to do so." (Internal quotation marks omitted.) Id., 581. In the present case, Edell's testimony was not remotely as incriminating as the alleged confession at issue in *Miguel C.*, and it merely corroborated the testimony that DA and DE had already provided.

We recognize that it is problematic that Edell quoted the children's allegations in support of her conclusion that the children had made what the prosecutor categorized as a "good disclosure."[4] We are not convinced, however, that her statements substantially affected the verdict. Although the victims' credibility was a central issue in this case, the defendant's admission that "maybe" he committed the crimes charged and the corroboration by SA rendered the victims' credibility less central to the case. See *State* v. *Iban C.*, supra, 275 Conn. 631–32, 645–46 (because "the victim's credibility was not nearly as central to the state's ability to obtain a conviction" where defendant confessed to acts constituting risk of injury, admission of expert testimony vouching for complainant's credibility was harmless). Moreover, whether the victims used age inappropriate language is a matter on which the jurors might have applied their common knowledge. In light of all of these factors, we conclude that even if we assume that Edell's testimony as to the challenged statements was improperly admitted, the defendant has not demonstrated that its admission was harmful.

### III

Finally, we address the defendant's claim of prosecutorial impropriety. The defendant contends that the prosecutor who tried this case made improper statements during his rebuttal argument by relying substantively on the victims' out-of-court statements admitted for a limited purpose through Edell's testimony. The defendant argues that these improprieties deprived him of a fair trial and that his conviction should therefore be reversed. The state responds that the argument at issue either responded to assertions in the defendant's closing argument or addressed uncontested facts in

evidence. We conclude that, even assuming arguendo that the prosecutor's statements in whole or in part were improper, the defendant was not deprived of a fair trial.[5]

The record reveals the following additional facts. In his closing argument, defense counsel advanced the theory that the allegations were a result of coaching or misunderstanding. He argued that the victims' grandmother had contaminated the victims' disclosures by repeatedly asking DA and DE whether the defendant had touched them inappropriately. He contended that any touching by the defendant was not of a sexual nature. Defense counsel further argued that DA, DE, and SA contradicted each other in their testimony.

In his rebuttal argument, the prosecutor made the following remarks, the emphasized comments indicating those to which the defendant has objected on appeal: "But my point is—you know, you might say, Oh, [the victims' grandmother] did the right thing as a grandparent. You know, there was something weird about what was going on in that house. And every once in a while . . . would say, You know, anything going on there? Is there—is he touching you inappropriately? And, of course, the answer most of the time was, no. But then there was that one point when DA—DE was finally able to say, You know, I—something that did happen, and here—and he—remember, she described how he laid on the ground and he demonstrated it. This wasn't the words from [their grandmother] that was being channeled somehow through this child. And when DE . . . was interviewed by . . . Edell, again, [the grandmother] wasn't present there . . . [in] their interview, and what was told there. *And have you heard about any major inconsistencies that were given from that point* [*until*] *today*?" (Emphasis added.)

Later, the prosecutor stated: "[D]o you remember . . . Parrott, Officer . . . Parrott from the Plymouth Police Department? And do you remember that she went to [the defendant's] house? And when did she go to his house? Three days after DE had told . . . Edell *what had happened in that bedroom and in that bed.*" (Emphasis added.) The prosecutor further argued that DE had no reason to lie to Edell and that "there's no mistake" that what DE had disclosed to Edell was "of a sexual nature."

As we have frequently stated, in analyzing a defendant's claim of prosecutorial impropriety, "we ask whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial [impropriety]." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams*, 204 Conn. 523, 539–40, 529 A.2d

653 (1987). "[I]n conformity with courts in other jurisdictions, [this court] has focused on several factors. Among them are the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case. . . . Regardless of whether the defendant has objected to an . . . [impropriety], a reviewing court must apply [these] . . . factors to the entire trial, because there is no way to determine whether the defendant was deprived of his right to a fair trial unless the [impropriety] is viewed in light of the entire trial. . . .

"This does not mean, however, that the absence of an objection at trial does not play a significant role in the application of the [foregoing] factors. To the contrary, the determination of whether a new trial or proceeding is warranted depends, in part, on whether defense counsel has made a timely objection to any [incident] of the prosecutor's improper [conduct]. When defense counsel does not object, request a curative instruction or move for a mistrial, he presumably does not view the alleged impropriety as prejudicial enough to jeopardize seriously the defendant's right to a fair trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Maguire*, 310 Conn. 535, 560–61, 78 A.3d 828 (2013).

We conclude that none of the factors that we have identified weighs in the defendant's favor. Indeed, for the reasons discussed in part II of this opinion, the state's case was quite strong independent of the testimony by Edell of the victims' statements from the forensic interviews. Accordingly, we conclude that the prosecutor's few vague references to Edell's testimony were not so severe as to have "infected the trial with unfairness." (Internal quotation marks omitted.) *State* v. *Fauci*, 282 Conn. 23, 50, 917 A.2d 978 (2007). Therefore, the defendant's claim of prosecutorial impropriety must fail.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

[1] We have reversed the order of the first two certified issues to dispose at the outset of the claim that we deem unpreserved. See *State* v. *Paul B.*, 310 Conn. 909, 76 A.3d 626 (2013). Although the certified issue is framed broadly enough to encompass that claim, such broad framing does not excuse the defendant from meeting our long-standing preservation requirements, which we address in part I of this opinion.

[2] In his brief to the Appellate Court, the defendant intertwined his argument regarding Parrott's references to the forensic interview with an argument that was consistent with the objection he made at trial to the admission of the details of DE's allegations. He argued that "[t]he state could have

achieved its purpose of putting the defendant's answers in context *without alluding to the forensic interviews* or quoting the victims directly." (Emphasis added.) *State* v. *Paul B.*, Conn. Appellate Court Records & Briefs, February Term, 2013, Defendant's Brief p. 27. The Appellate Court, however, did not address the defendant's claim regarding Parrott's references to the forensic interview. See *State* v. *Paul B.*, supra, 143 Conn. App. 710–15.

[3] The defendant relies on concurring and dissenting opinions in *Williams* v. *Illinois*,      U.S.     , 132 S. Ct. 2221, 183 L. Ed. 2d 89 (2012), for the proposition that any time an expert conveys an out-of-court statement to the jury as a basis for her opinion, the statement is offered for its truth and is therefore inadmissible hearsay. In *Williams*, a confrontation clause case, Justice Clarence Thomas, in his concurring opinion, and four dissenting justices essentially adopted this view. See id., 2257 (Thomas, J., concurring); id., 2268–69 (Kagan, J., dissenting); see also 2 K. Broun, McCormick on Evidence (6th Ed. 2006) § 324.3, p. 419. We note that the court in *Williams* was interpreting Illinois rules of evidence and the case therefore provides little guidance for this court. Moreover, because we conclude that any impropriety in the admission of Edell's testimony was harmless, we need not determine in the present case whether, as a blanket rule, an expert's reliance on an out-of-court statement as the basis for her opinion automatically converts the statement into inadmissible hearsay. See footnote 4 of this opinion (addressing vouching concerns raised by expert's use of such statements).

[4] The state acknowledges that, in light of this court's decision in *State* v. *Favoccia*, supra, 306 Conn. 803, which was decided after the trial in this case, this testimony was improper because it constituted indirect vouching for the credibility of the victims. The state argues, however, that the Appellate Court properly determined that, because the defendant did not lodge a vouching objection at trial, such a claim is unreviewable. See *State* v. *Paul B.*, supra, 143 Conn. App. 700–701. The defendant does not raise a separate vouching claim on appeal before this court, but we consider whether the testimony had that effect to the extent that it is relevant to the question of whether the admission of the statements, if improper, was harmful.

[5] The state argues that the defendant's prosecutorial impropriety claim is not reviewable on appeal because the Appellate Court construed the defendant's claim as only challenging the prosecutor's references to the out-of-court statements admitted through Parrott's testimony. We disagree that the claim should not be reviewed. Our review of the record reveals that the defendant did challenge the prosecutor's references to both the testimony of Parrott and Edell, but the Appellate Court limited its review to the prosecutor's references to Parrott's testimony. *State* v. *Paul B.*, supra, 143 Conn. App. 715, 718–19. Although the defendant did not file a motion for reconsideration to address the overlooked argument, he argued in his petition for certification that the Appellate Court "misse[d] the point that the prosecutor had no right to repeat DE's allegations of abuse *from the interview with . . . Edell . . . .*" (Emphasis in original.)