# STATE OF CONNECTICUT *v.* BRUCE WARREN SOUZA
## (AC 31378)

Beach, Robinson and Pellegrino, Js.

Argued October 15—officially released December 14, 2010

*Heather M. Wood,* deputy assistant public defender, for the appellant (defendant).

*Raheem L. Mullins,* assistant state's attorney, with whom, on the brief, were *Gail P. Hardy,* state's attorney, and *Christopher A. Parakilas,* supervisory assistant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Bruce Warren Souza, appeals from the judgment of conviction, rendered following a jury trial, of burglary in the second degree in violation of General Statutes (Rev. to 2007) § 53a-102 (a) (2).[1] On appeal, the defendant claims that (1) the evidence was not sufficient to support the jury's verdict and (2) prosecutorial impropriety during the state's closing argument deprived him of his right to due process. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On April 13, 2007, at approximately 9 a.m., the complainant, Carianne Bergeron, awoke at her home in Enfield. At the time, the only other person in the house was the complainant's elderly grandmother, who remained asleep in her room. Upon opening the blinds on a window in the front of her house, the complainant

---

[1] General Statutes (Rev. to 2007) § 53a-102 (a) provides in relevant part: "A person is guilty of burglary in the second degree when such person . . . (2) enters or remains unlawfully in a dwelling, while a person other than a participant in the crime is actually present in such dwelling, with intent to commit a crime therein."

saw the defendant walking through her yard and toward the home. As she looked out a kitchen window facing her backyard, she watched as the defendant entered the home's enclosed breezeway that connected the kitchen to the garage. From her position crouched behind the refrigerator, she witnessed the defendant cup his hands against the kitchen window and peer inside. The complainant waited there for approximately three minutes until she thought she heard the screen door to the breezeway opening. At that point, she telephoned 911 from her home telephone. While on the telephone with police, she heard the defendant rattle the kitchen door handle. The defendant then exited the breezeway and walked down the driveway back toward the street. The police arrived shortly thereafter, locating the defendant on the street a few houses down from the complainant's home. The complainant identified the defendant as the man who had entered her home that morning, and he was placed under arrest.

Later that day, at the Enfield police station, the defendant gave a detailed statement regarding his actions that morning, which was admitted as a full exhibit at trial. In the statement, the defendant acknowledged that he was drawn to the home after he saw a pile of bicycles toward the back of the house and that he eventually entered the home with the intent of stealing a bicycle inside. The defendant stated, "I know it was a dumb thing to do, but I thought I would take one of the bikes so I wouldn't have to walk to where I was going. When I got to the bikes I saw they weren't rideable. I decided to look in the garage that was connected to the house. I thought maybe there was a bike in the garage."

On May 13, 2009, the case was tried to a jury on a one count information charging the defendant with burglary in the second degree in violation of General Statutes (Rev. to 2007) § 53a-102 (a) (2). On defense counsel's request, the jury was also instructed on the

lesser included offense of criminal trespass in the second degree in violation of General Statutes § 53a-108 (a) (1).[2] The jury found the defendant guilty of the greater offense of burglary in the second degree, and the court imposed a total effective sentence of ten years imprisonment, execution suspended after six years, followed by three years of probation. This appeal followed. Additional facts and procedural history will be provided as necessary.

I

The defendant first claims that the court improperly rendered judgment against him on the charge of burglary in the second degree because there was insufficient evidence that (1) the breezeway constituted a dwelling and (2) he intended to commit a crime therein. We disagree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support

[2] General Statutes § 53a-108 (a) provides in relevant part: "A person is guilty of criminal trespass in the second degree when, knowing that such person is not licensed or privileged to do so, (1) such person enters or remains in a building. . . ."

a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Arthurs*, 121 Conn. App. 520, 523–24, 997 A.2d 568 (2010).

The defendant claims that there was insufficient evidence to show that the breezeway constituted a dwelling. General Statutes § 53a-100 (a) (2) defines "dwelling" as "a building which is usually occupied by a person lodging therein at night, whether or not a person is actually present . . . ." Section 53a-100 (a) (1) defines a "building" as having "its ordinary meaning . . . ." A "building," according to Black's Law Dictionary, is a "[s]tructure designed for habitation, shelter, storage, trade, manufacture, religion, business, education, and the like." Black's Law Dictionary (6th Ed. 1990).

The complainant testified that the breezeway was furnished and extensively used by her family. She stated that the breezeway had "a little dining room table, rocking chair and table, another regular chair . . . [and] a shelf with a chair in front of that." She also testified that when it rained, the family had cookouts and ate in the breezeway, children played games there and that she allowed guests to smoke in that area. The complainant specifically stated that she considered the enclosed breezeway part of her home. There was sufficient evidence, therefore, from which the jury reasonably could have concluded that the breezeway constituted a part of the family's dwelling.

The defendant also claims that there was insufficient evidence that he entered the breezeway with the intent to commit a crime. The court admitted as a full exhibit the defendant's statement to police, in which he confessed that he had entered the breezeway with the intent

to steal a bicycle from inside the garage. The complainant also testified that the defendant was unknown to her or anyone in her family and that he did not have permission to enter the home. She witnessed him cup his hands up against the window and peer inside and rattle the kitchen door handle in an attempt to open it. From the aforementioned evidence, the jury reasonably could have concluded that the defendant's unlawful entry into the home was for the purpose of committing a theft.

## II

The defendant next claims that prosecutorial impropriety during the state's closing argument deprived him of his right to due process. While we agree that the prosecutor made improper remarks during his closing argument, we conclude that, in the context of the entire trial, the defendant was not deprived of his right to due process.

We begin by setting forth the legal principles and standard of review that guide our analysis. "In analyzing claims of prosecutorial impropriety, we engage in a two step analytical process. . . . The two steps are separate and distinct. . . . We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial. . . . [T]he touchstone of due process analysis in cases of alleged[ly] [harmful] prosecutorial [impropriety] is the fairness of the trial, and not the culpability of the prosecutor. . . . The issue is whether the prosecutor's [actions at trial] so infected [it] with unfairness as to make the resulting conviction a denial of due process. . . . In determining whether the defendant was denied a fair trial . . . we must view the prosecutor's [actions] in the context of the entire trial. . . .

"An appellate court's determination of whether any improper conduct by the prosecutor violated the defendant's right to a fair trial is predicated on the factors established in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). Those factors include the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case."[3] (Internal quotation marks omitted.) *State* v. *Lynch*, 123 Conn. App. 479, 503, 1 A.3d 1254 (2010).

The prosecutor made the following comments during closing argument to the jury: "Home sweet home; there's no place like home; home is where the heart is; home is a person's castle; I just want to go home. I could give you dozens of references of either poems, song lyrics, or age-old adages that have the word home in it. Why is that the case? It's a special place. It's a very special place. . . .

"And I got to tell you right now, folks, it's the state's belief that none of these elements are an issue. There's

---

[3] As our Supreme Court has stated, "[W]e do not engage in the review of unpreserved claims of prosecutorial [impropriety] under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), because the consideration of the *Williams* prosecutorial impropriety factors duplicate, and, thus makes superfluous, a separate application of the *Golding* test. . . . The absence of an objection at trial, however, plays a significant role in the application of the *Williams* factors: When defense counsel does not object, request a curative instruction or move for a mistrial, he presumably does not view the alleged impropriety as prejudicial enough to seriously jeopardize the defendant's right to a fair trial. . . . [Thus], the fact that defense counsel did not object to one or more incidents of [impropriety] must be considered in determining whether and to what extent the [impropriety] contributed to depriving the defendant of a fair trial and whether, therefore, reversal is warranted." (Citation omitted; internal quotation marks omitted.) *State* v. *Outing*, 298 Conn. 34, 82 n.23, 3 A.3d 1 (2010).

no contention whatsoever [that] the facts meet the evidence. I firmly believe that, but this is about what you believe. I will tell you that five out of six of these are not in dispute. They're not in dispute based on the witness testimony that you heard, and they're not in dispute based on the statements, the confession that the defendant gave. Not in dispute. . . .

"That leaves us with dwelling. And, again, as far as the state is concerned, this isn't even an issue. But the defense is going to ask you to find [the defendant] not guilty of burglary in the second degree because the breezeway was not a part of the dwelling. And if you believe that, using all your common sense and discretion, that, that you brought with you here today and that you have inside of you, if you believe that, then let him go. I'll tell you again. You believe that the breezeway is not part of the dwelling, let him go. . . .

"At the end of the day, you've got to weigh all this stuff. You've got to use your common sense, like I said, your sense of good judgment, and you've got to make a decision. If you feel in your heart of hearts, based on everything you learned about this, that the defendant did not commit a crime here, let him go. But if you think he broke into this home, this home sweet home, you know what you have to do."

As our Supreme Court has stated, "[t]he prosecutor may not express his own opinion, directly or indirectly, as to the credibility of the witnesses. . . . Nor should a prosecutor express his opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in

evidence . . . it is likely to infer that such matters precipitated the personal opinions." (Internal quotation marks omitted.) *State* v. *Grant*, 286 Conn. 499, 546, 944 A.2d 947, cert. denied, 555 U.S. 916, 129 S. Ct. 271, 172 L. Ed. 2d 200 (2008).

We find particularly troubling the prosecutor's multiple suggestions to the jury that if it failed to determine that the home's breezeway was part of the dwelling, it should "let him go." By doing so, the prosecutor ignored that the jury could have found the defendant guilty of the lesser included offense of criminal trespass in the second degree. Moreover, juxtaposed with the prosecutor's poetic references of "home sweet home," and that "home is where the heart is," the prosecutor's suggestion that the jury should "let [the defendant] go" served improperly to appeal to the emotions and fears of the jury.

"[A] prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . [S]uch appeals should be avoided because they have the effect of diverting the [jurors'] attention from their duty to decide the case on the evidence. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal." (Internal quotation marks omitted.) *State* v. *Bell*, 283 Conn. 748, 773, 931 A.2d 198 (2007).

Further, the prosecutor improperly infused his own beliefs into the minds of the jurors when he stated: "I got to tell you right now, folks, it's the state's *belief* that none of these elements are an issue. There's no contention whatsoever [that] the facts meet the evidence. *I firmly believe that*, but this is about what you believe. I will tell you that five out of six of these are

not in dispute." (Emphasis added.) Later, in emphasizing that the complainant's breezeway was part of the dwelling, the prosecutor stated that "as far as the state is concerned, this isn't even an issue." Such statements of his own beliefs could have led the jury, aware that the prosecutor may have access to matters not in evidence, to infer that his firm belief came, in part, from evidence outside the scope of trial. See *State* v. *Alexander*, 254 Conn. 290, 304, 755 A.2d 868 (2000) ("[i]t is well established that a prosecutor may not express [his] own opinion, either directly or indirectly, as to the . . . guilt of the defendant").

The next step in our analysis is to determine whether the prosecutor's improper comments, in the context of the entire trial, prejudiced the defendant and deprived him of a fair trial. "Just as the prosecutor's remarks must be gauged in the context of the entire trial, once a series of serious improprieties has been identified we must determine whether the totality of the improprieties leads to the conclusion that the defendant was deprived of a fair trial. . . . Thus, the question in the present case is whether the sum total of [the prosecutor's] improprieties rendered the defendant's [trial] fundamentally unfair, in violation of his right to due process. . . . The question of whether the defendant has been prejudiced by prosecutorial [impropriety], therefore, depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties. . . . Furthermore, whether a new trial or proceeding is warranted depends, in part, on whether defense counsel has made a timely objection to any of the prosecutor's improper remarks." (Internal quotation marks omitted.) *State* v. *Outing*, 298 Conn. 34, 81–82, 3 A.3d 1 (2010).

In the present case, there is not a reasonable likelihood that the jury's verdict would have been different absent the sum total of improprieties. The prosecutor's

improprieties, only occurring during his closing argument, were not severe and were infrequent. The evidence against the defendant, including his statement to police on the day of the burglary, was quite strong. The state presented the testimony of the complainant, as well as the defendant's own statement confessing that he had entered the home in an attempt to steal a bicycle. "The state's evidence does not need to be overwhelming to support a conclusion that prosecutorial impropriety did not deprive the defendant of a fair trial." *State* v. *Felix*, 111 Conn. App. 801, 816, 961 A.2d 458 (2008). Moreover, the defendant chose not to object or to request a curative instruction at the time the statements were made, suggesting that within the context of the trial, they were not prejudicial enough to jeopardize seriously his right to a fair trial. We, therefore, conclude that while the prosecutor made several improper statements, those improprieties did not deprive the defendant of his right to a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.