STATE OF CONNECTICUT *v.* PAUL B.*
(AC 33473)

Robinson, Bear and Borden, Js.

* In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

Argued February 13—officially released July 2, 2013

*Glenn W. Falk*, assigned counsel, for the appellant (defendant).

*Kathryn W. Bare*, assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *Kevin J. Murphy*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

BEAR, J. The defendant, Paul B., appeals from the judgment of conviction, following a jury trial, of two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). On appeal, the defendant claims that (1) the trial court improperly admitted hearsay statements of the victims through the testimony of an expert witness; (2) the trial court improperly admitted hearsay statements of the victims to provide context for a police officer's testimony about her interview with the defendant and failed to provide the jury with a limiting instruction for such hearsay statements; and (3) the state engaged in prosecutorial impropriety during closing argument when it used out-of-court statements made by the victims that had not been admitted into evidence for their truth. We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to this appeal. In 2005, the victims, who at all relevant times were children under the age of thirteen, and the defendant resided in two separate homes in close proximity to one another in Terryville. Another child, SA, not a victim in this case, visited his grandmother's home, which was across the street from the defendant's home. On occasion, the defendant baby-sat SA, and at times SA spent the night at the defendant's home. While SA was playing outside at the defendant's home, he met the victims, DA and DE, with whom he became friends. The defendant subsequently met the victims during their April vacation from school when they were playing with SA outside of his home. In the following weeks, the defendant met the victims' parents. The victims then began to sleep over at the defendant's home and, on occasion, he baby-sat them. When the defendant baby-sat the victims overnight, they occasionally slept in the defendant's bed with him. The defendant also dried off the victims with a towel after they showered at his home. Additionally, the defendant took the victims on an overnight trip to an amusement park in New Jersey.

The defendant wore only underwear when the victims slept in bed with him at his home. Approximately twice per week, DE would wear clothes to bed with the defendant, but would wake up not wearing clothes and feeling something wet "on [his] private." The defendant would explain such occurrences by saying that DE had wet the bed. The defendant touched and rubbed DE's nipples and buttocks each night DE stayed over. The defendant also touched DE's penis and showered with DE. There were occasions when the defendant asked DA not to wear clothes to bed and, on occasion, the defendant did not wear any clothes to bed.

In July, 2005, the defendant injured his foot and moved into the home of the victims' parents, at the

parents' suggestion, in lieu of moving into a convalescent home. Originally, the victims' parents intended that the defendant live in the basement of the home. Due to the defendant's foot injury and the stairs leading to the basement, however, the defendant slept on the couch on the main floor of the home. The defendant bought the victims' parents many items, including a refrigerator; a washer and dryer; and a living room set. He also split the cost of a bunk bed for the victims with their grandmother. The bunk bed consisted of a twin-size bed on the top bunk and a full-size bed on the bottom bunk. In 2007, the defendant legally adopted the victims' mother. The defendant lived in the home for approximately two and one-half years.

While the defendant lived in the home, DE called him "grandpa." The defendant often slept in the bottom bunk bed with the victims and dried off the victims after they showered. On at least one occasion, the defendant touched DA "in a private place" while drying off DA following a shower. There were times that the defendant touched DA's penis and rubbed his buttocks while in bed. Once, the defendant told DA to take off his clothes and refused to give a toy back to DA "unless [DA] got naked." DA refused to do so and, instead, "slept under the bed." One morning, while in bed with the defendant, DA woke up and "his face was all wet." DA talked to the defendant about it, and the defendant told DA that DA had "just drooled in [his] sleep."

DA observed the defendant touch DE in the same manner that the defendant touched DA—in the area of his buttocks and penis. DA observed the defendant touch DE "quite often." The defendant removed DE's pants while DE slept. The defendant touched DE's nipples, buttocks and penis while DE slept. Once, the defendant asked DE if he could touch DE's penis and DE refused. DE often felt wetness in the bed when he awoke in the morning, and the defendant would tell

DE that he had wet the bed. DE often saw wetness in the bed, but he could not tell "if it was drool marks or just pee." There were times when the defendant would suck DE's nipples while DE slept. Once, DE felt "wetness" on his penis, "like, drool or something," while he slept, and he woke up to see the defendant's face near his midsection. DE also felt the defendant lick his neck. DE left the bed to sleep in the living room to avoid the defendant touching him, "like, five times." The defendant told DE that he would hurt him if he told his parents about the touching. DA did not tell his parents about the defendant's having touched him or DE because the defendant threatened that "he'd kill [the victims] or hurt [the victims]."

The victims' grandmother was concerned "that something was going on." The grandmother periodically asked the victims whether the defendant did anything to them or touched them inappropriately. While spending the night at the grandmother's home in June, 2008, DE told his grandmother that the defendant had touched him inappropriately. DE "laid down on the floor and [demonstrated what the defendant] had done to him." While demonstrating on the floor, DE told his grandmother that "he was kind of curled up, and he said that he was sleeping and [the defendant] was playing with his private, and he says he woke up and he told him to stop it. And then [the defendant] was kind of surprised that he woke up, so he stopped." The grandmother informed the victims' mother two weeks later about what DE had demonstrated. The grandmother also informed her brother and the uncle of the victims' mother, J, about DE's statement. The victims' mother called her husband, who is DE's father and DA's stepfather, to inform him of DE's statement. As a result, the husband had a conversation with the defendant that resulted in the defendant leaving the home. J called the police to report the defendant's actions.

On August 4, 2008, Officer Kim Parrott received a telephone call complaint from J reporting a possible sexual assault that happened in the patrol zone that included the victims' residence. J referred Parrott to the victims' grandmother for further information because "she had disclosed to him that his nephew was possibly being sexually assaulted in his home by a live-in baby-sitter." After speaking with the victims' grandmother, Parrott "called the [Department of Children and Families'] hotline and reported the incident to them." On August 12, 2008, Diane Edell, a licensed clinical social worker, conducted a detailed interview of DE, for which Parrott was present.[1] On August 15, 2008, Parrott interviewed the defendant about the reported conduct for approximately twenty to thirty minutes. On August 25, 2008, Edell conducted a detailed interview of DA, for which Parrott was present. Subsequently, an arrest warrant was processed relating to the victims' statements and the defendant was arrested. The court held a six day jury trial at the conclusion of which the jury found the defendant guilty of two counts of risk of injury to a child in violation of § 53-21 (a) (2). This appeal followed. Additional facts will be set forth as necessary.

I

On appeal, the defendant sets forth two claims that the trial court improperly admitted hearsay statements of the victims during the testimony of an expert witness, Edell. First, the defendant claims that the court improperly admitted testimony by Edell that constituted improper opinion on the credibility of the victims. Second, the defendant claims that the court improperly admitted a statement made by Edell that contained statements relayed to her by the victims during her interviews with them that constituted inadmissible hearsay. We will address each claim in turn.

[1] At trial, Edell was qualified as an expert "in the area of child interviews and the dynamics of child sexual abuse and issues related."

## A

We first address the defendant's claim that the court improperly admitted testimony by Edell that constituted improper opinion on the credibility of the victims. We are not persuaded that this issue properly is raised on appeal.

The defendant challenges three responses that Edell made during her testimony. First, Edell was asked: "What were the factors that you were particularly observing in regard to [the victims] . . . that you were looking for to try to, you know, make sure that this was a valid disclosure?" Edell responded generally by discussing certain factors, without specifically referring to either victim or stating that either of them demonstrated any particular factor.[2] Defense counsel did not

---

[2] Edell responded to the question using generic terms such as "a child" and "children," without specifically referring to or naming either of the victims: "Okay. I'm looking for detail—well, let's start with the word we were just using: context. We're looking—I'm looking for—for instance, I once got a disclosure from a child who said such and such—so and so did such and such. And I said, what room was it? And she said, I don't know. And that's all she was able to give me. I'm looking for more than that. I want to know where it was. I want to know what the circumstances were of them being there. If it's a place that they don't usually have access to, I might want them to describe the room and tell me about that. I'm looking for verbal interact—I'm looking for details.

"So, I'm looking for, first, detail about sexual acts, if they can give me that. Then I'm looking for other detail. I'm looking for detail, if they can tell me how it felt. I'm looking for detail about was there verbal interaction. I'm looking for detail of what positions people were in. What they were wearing, how their clothes were, were they—we'll go back to sexual acts. I mean if they're telling me that, for instance, that they were touched, I'm going to ask if they had to do any touching. So, I'm going to try to explore any kind of sexual acts without saying anything specific—you know, very specific. In other words, I won't say did so-and-so make you, you know, rub up and down on his pee pee, too. I won't say that. I'll say did so-and-so want you to do something to him. So, I'll try to make it as broad as possible to get detail.

"Context, I'm looking for whether this child is giving me any spontaneous information, which means they're not just answering my question, but they're adding stuff, or they're doing stuff without me asking. I'm looking for—I'm certainly looking for some consistencies. In other words, throughout the

object to the question or to Edell's response to the question.

Later in her testimony, Edell was asked to give specific examples of how the victims demonstrated any of those factors, and she responded by referencing specific behavior exhibited by the victims. Defense counsel then objected to her response on the basis of hearsay. The court overruled the objection and instructed the jury that Edell's response regarding the factors she observed was not to be used for the truth of the matter asserted in her response; rather, it was to be used "for the limited purpose of the witness' testimony relating to factors looked for during the interview."

Even if we were to construe this question and Edell's response as a continuation of the previous question and answer, we would still conclude that the defendant's claim of improper expert opinion on credibility is not preserved because defense counsel did not object to any of the questions and answers on the basis of improper opinion on the credibility of the victims. See *State* v. *Ricketts*, 140 Conn. App. 257, 261–62, 57 A.3d 893, cert. denied, 308 Conn. 909, 61 A.3d 531 (2013). The trial court thus could not and did not consider and rule upon this claim, which is made for the first time on appeal.

interview I don't want the story to change every five minutes. I want to see that they're consistent about the core elements, that they're telling me the most important things.

"I'm going to expect, especially if time has passed—but even if for all of us as adults, you're not going to say exactly the same details each time. You might remember different things, but you want the core elements to be the same.

"I'm going to look with children at things, like, are there things they know about, or they're telling me about sexually, that they wouldn't know otherwise. So that the touching of the pee pee might be one thing that kids hear, that, oh, so-and-so wanted to touch me, or grab my butt, or something like that, but when they tell me other things that are of a sexual nature that only more sophisticated or older people or adults will know. I'm listening for that because it's inappropriate sexual knowledge. Things like that."

Edell was also asked, "[w]as there something else that you think of [that] shows that any one of the factors that showed you that it wasn't a fabricated type of disclosure?" Defense counsel objected, arguing that "[t]his is commenting straight on the credibility of the witness." Without comment, the court sustained defense counsel's objection.

In his brief, the defendant argues that Edell's response to the first question contained specific statements made by the victims as a means of addressing the victims' credibility by the expert witness. Defense counsel, however, did not object to the question or to Edell's response. This claim of error on appeal is unpreserved and, therefore, unreviewable. "[A]ssigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Ricketts,* supra, 140 Conn. App. 261–62.

Additionally, the defendant also challenges Edell's responses to the second and third questions on the same basis, which is that the court improperly admitted improper opinion on the credibility of the victims. The record demonstrates that defense counsel did not object to Edell's response to the second question on the basis of improper opinion on credibility, but, rather, defense counsel objected to that response on the basis of hearsay. Thus, counsel failed to preserve the defendant's claim on appeal that Edell's response constituted improper opinion on the credibility of the victims. The defendant not having objected during the trial to the first question or response, or to the second question or the response thereto on the specific ground now raised on appeal, we decline to consider this challenge. See id. Furthermore, with respect to the third question, the record demonstrates that the court sustained defense counsel's objection, which prevented Edell from

responding to the third question. Thus, Edell did not give a response that the defendant can attack on appeal as constituting improper opinion on the credibility of the victims. We conclude, therefore, that the defendant's claim that Edell's testimony constituted improper opinion on the credibility of the victims must fail.[3]

B

The defendant also claims that the court improperly admitted testimony by Edell that contained statements of the victims during her interviews with them that constituted inadmissible hearsay. In making this claim, the defendant sets forth several supporting arguments. Before addressing these arguments in turn, we set forth the portion of Edell's examination by the prosecutor in which she made the statements that the defendant argues contain inadmissible hearsay:

"Q. You mentioned something—go ahead.

"A. The other thing that stood out for me about these kids is that they both talked about—both DE and DA talked about sexual stuff that kids their age don't know about because they don't really know they're such sexual. Do you want me to be specific?

"Q. Could you give me an example?

"A. Yeah. He put his tongue in my belly button. That's not something that eleven year old kids know about. He sucked on my nipples. DE talked about his licking his penis."

Defense counsel objected to Edell's testimony in a sidebar on the basis of hearsay. The court overruled the objection on the ground that the statements were not being offered for the truth of the matter asserted.

---

[3] We note that the defendant has not requested review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine. See Practice Book § 60-5.

The court then gave the jury the following limiting instruction about the statements in Edell's testimony: "Ladies and gentlemen, the response, the testimony you just heard before the objection, I'm permitting it for a very limited purpose. . . . The response to the question is—the testimony that's objected to, that you just heard, is being admitted not as, to—for proof of the matter asserted, not to prove that the statement made, in fact, was true or happened, but to—for the limited purpose of the witness' testimony relating to the factors looked for during the interview. All right. So, you're not to use it, or rely on it, in any way for the truth of the matter asserted."

1

First, the defendant argues that the court improperly admitted the statements for a nonhearsay purpose because the statements constituted inadmissible hearsay. The defendant argues that Edell relied on the statements for their truth in her testimony regarding the validity of the victims' disclosures and, therefore, the statements were offered to prove the defendant's guilt. In overruling the objection and in its limiting instruction to the jury, the court stated that the statements were not being admitted for the truth of the matter asserted.

"To the extent [that] a trial court's admission of evidence is based on an interpretation of the [Connecticut] Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review." (Internal quotation marks omitted.) *State* v. *Miguel C.*, 305 Conn. 562, 571, 46 A.3d 126 (2012). "Hearsay means a statement, other than one made by the declarant while testifying at the proceeding, offered in evidence to establish the truth of the matter asserted. Conn. Code Evid. § 8-1 (3). The hearsay

rule forbids evidence of out-of-court assertions to prove the facts asserted in them. If the statement is not . . . offered to prove the facts asserted, it is not hearsay." (Internal quotation marks omitted.) *State* v. *Miguel C.*, supra, 572.

In the present case, the court admitted Edell's testimony on the ground that it did not constitute hearsay because the statements were not being offered for the truth of the matters asserted in the statements. The court ruled that Edell's testimony regarding the statements made to her by the victims during her interviews with them was offered as an example of one of the factors Edell looked for when interviewing children who have disclosed sexual abuse, i.e., age inappropriate knowledge. Our review of the record leads us to conclude that the statements were being offered as an example of age inappropriate knowledge, not for the truth of the matter asserted.

The court also gave the jury a limiting instruction as to Edell's testimony in which the court directed the jury not to consider the statements made to her by the victims substantively, but, rather, to consider them as an explanation of Edell's testimony with regard to such factors. "We are mindful that a trial court's limiting instructions about the restricted purpose for which the jury may consider [certain] evidence serve to minimize any prejudicial effect that such evidence otherwise may have had . . . . [I]n the absence of evidence to the contrary, we presume that the jury properly followed those instructions." (Citations omitted; internal quotation marks omitted.) *State* v. *Cutler*, 293 Conn. 303, 314, 977 A.2d 209 (2009). We note "that such instructions are far more effective in mitigating the harm of potentially improper evidence when delivered contemporaneously with the admission of that evidence, and addressed specifically thereto." *State* v. *Favoccia*, 306 Conn. 770, 816, 51 A.3d 1002 (2012). We conclude that the court

properly determined that the victims' statements set forth in Edell's testimony were not being offered for the truth of the matter asserted and, thus, that they did not constitute hearsay.

The defendant argues, in the alternative, that even if Edell's recitation of the victims' statements was not inadmissible hearsay, the court abused its discretion in admitting the statements due to the strong likelihood of jury confusion and its improper use of the statements for substantive purposes. At trial, defense counsel made a hearsay objection to the statements, which the court overruled. Defense counsel, however, did not object to Edell's use of the victims' statements on the ground that they were unduly prejudicial. "This court reviews rulings solely on the ground on which the party's objection is based. . . . [A]rticulating the basis of the objection alert[s] the court to any claims of error while there is still an opportunity for correction. . . . [W]e have consistently declined to review claims based on a ground different from that raised in the trial court . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Scott C.*, 120 Conn. App. 26, 34, 990 A.2d 1252, cert. denied, 297 Conn. 913, 995 A.2d 956 (2010). Accordingly, we decline to review this claim, raised for the first time on appeal, that the statements were unduly prejudicial, because it was not made in the trial court and thus preserved.[4]

2

The defendant also argues that the court refused to give a supplemental limiting instruction once defense counsel expressed concern that the jury was using the

[4] Additionally, the defendant argues that the court's admission of Edell's statements constituted harmful error that warrants a new trial. Having already concluded that the court properly admitted Edell's statements for a nonhearsay purpose, we necessarily conclude that the defendant has failed to demonstrate that the court committed harmful error in admitting Edell's statements.

out-of-court statement "about penis licking" for substantive purposes. We are not persuaded. The following testimony is relevant for our consideration of this argument.

During cross-examination, the prosecutor asked Edell to give her an example of age inappropriate sexual knowledge, one of the factors Edell looked for when interviewing children who disclose sexual abuse. Edell responded in part: "DE talked about [the defendant] licking his penis." Defense counsel objected to this response as hearsay. A colloquy ensued among the court, defense counsel and the prosecutor, at which time defense counsel requested "that a curative instruction be given to the jury." The court gave the jury the requested instruction, stating, inter alia: "you're not to use it, or rely on it, in any way for the truth of the matter asserted." When the court gave the jury its formal closing instruction, it again instructed the jury regarding Edell's testimony, stating: "You may recall that you heard testimony that DE reported the defendant licked his penis. This statement was admitted for a limited purpose. This statement was not admitted for the truth of the matter asserted. Which means as proof that the statement made, in fact, was true or the event happened. Rather, it was introduced to give context to the testimony of the particular witness. You are not to use it or rely on it in any way for the truth of the matter asserted."

During deliberations, the jury wrote a note to the court, stating: "Question one, licking penis. Does it constitute entrance into the defendant's mouth, deeming it fellatio? And what point does licking become entry? Two, we would like DE's testimony portion regarding to licking, kissing when in bed." When the court informed counsel for both sides how it would respond to the jury's questions, defense counsel stated: "The only issue I have, Judge, is that, in regard to the first question, we

didn't talk about that earlier today. I believe it asks whether the licking is okay.

"We discussed that briefly as far as your instruction is concerned, but I would ask the court to consider rereading the section on limited purpose as [in regard] to the licking of the penis testimony. I think it's just that one paragraph that was added by the court yesterday. It seems from that question—and here's the reasons I'm asking for that. It seems from that question that the jury might be considered—considering the licking of the penis in a substantive way rather than just for hearsay." The court responded: "But I'm telling them licking of the penis alone is not enough. So, I'm not going to— I'm going to answer their question and not start to read instructions. They have the instructions in front of them." The court went on to state that giving a supplemental instruction "would just confuse it. It might actually highlight it more than it would . . . assist. So, in this court's view, I don't see that it would be helpful to answer their question, and it would be more confusing to do so."

On appeal, the defendant argues that the court improperly refused to give a supplemental limiting instruction with respect to Edell's testimony that "DE talked about [the defendant] licking his penis" and that this allowed the jury to use that statement for substantive purposes. The defendant also argues that the jury's note to the judge asking whether penis licking constituted fellatio demonstrated the jury's improper use of that statement for substantive purposes. We are not persuaded.

"We begin with the well established standard of review governing the defendant's challenge to the trial court's jury instruction. Our review of the defendant's claim requires that we examine the [trial] court's entire charge to determine whether it is reasonably possible

that the jury could have been misled by the omission of the requested instruction. . . . Additionally, we have noted that [a]n [impropriety] in instructions in a criminal case is reversible . . . when it is shown that it is . . . reasonably probable for nonconstitutional [improprieties] that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Devalda*, 306 Conn. 494, 505–506, 50 A.3d 882 (2012). "It is well established that . . . [i]n properly instructing the jury it may or may not be necessary for the court to recall the attention of the jury to the evidence . . . or to comment [on] the evidence or [to] express an opinion as to its weight . . . . In reviewing whether the trial court must comment on any evidence that has been presented, we examine not only the entire jury charge . . . but also the presentation of the issues to the jury by counsel in the context of the trial. Within constitutional limitations concerning trial by jury, the nature and extent of the trial court's comments on the evidence must largely depend on the facts involved in a particular case and the manner in which it has been tried. . . . The extent to which a court should comment on the evidence is largely a matter within its sound discretion. . . . In some cases, where the issues are complicated, peculiar, or capable of differing conclusions, comment by the court is necessary. On the other hand, if the issues are clearly enumerated and the argument of counsel has fairly presented the case, a discussion in the charge of the details of the evidence may defeat its proper purpose." (Citation omitted; internal quotation marks omitted.) *State* v. *Flores*, 301 Conn. 77, 98–99, 17 A.3d 1025 (2011).

We must first determine whether the court's refusal to instruct the jury a third time regarding Edell's statement that "DE talked about [the defendant] licking his penis" constitutes an abuse of its discretion. Our review of the court's instructions to the jury regarding Edell's

statement demonstrates that the court provided clear direction to the jury about the permitted use of the statement. The court instructed the jury on two occasions that the statement was not to be used substantively and that it was to be used only to provide context to Edell's testimony. Addressing defense counsel's request for the supplemental instruction, the court reasoned that the jury had the instructions with them in the deliberating room for their review, that another instruction on the statement would highlight it for the jury and that it would be more confusing to the jury than helpful in light of the jury's question about whether penis licking constitutes fellatio. The court's reasoning demonstrates that the court was of the opinion that the supplemental instruction would defeat its proper purpose.

Furthermore, we disagree with the defendant's argument that the jury's note demonstrates that the jury improperly was using the statement for substantive purposes. The jury's note consisted of two parts: (1) the question whether "penis licking" constituted penetration for the purpose of fellatio; and (2) the request to rehear the portion of DE's testimony "regarding to licking, kissing when in bed." In this portion of his testimony, DE described an occasion when he felt "wetness" on his penis, "like, drool or something," while he slept, and he woke up to see the defendant's face near his midsection. Viewing this testimony in conjunction with the inquiry as to fellatio, we are not persuaded that the jury note demonstrates that the jury improperly used Edell's statement for substantive purposes because DE's separate testimony about the defendant's actions constituted substantive evidence the jury could credit. Again, "[w]e are mindful that a trial court's limiting instructions about the restricted purpose for which the jury may consider [certain] evidence serve to minimize any prejudicial effect that such evidence otherwise

may have had . . . . [I]n the absence of evidence to the contrary, we presume that the jury properly followed those instructions." (Citations omitted; internal quotation marks omitted.) *State* v. *Cutler*, supra, 293 Conn. 314. For the foregoing reasons, we conclude that it is not reasonably probable that the jury could have been misled by the court's omission of the requested supplemental instruction.[5]

## II

The defendant's next set of claims on appeal is that the court improperly (1) admitted inadmissible hearsay statements of the victims under the guise of explaining Parrott's testimony regarding her interview with the defendant, (2) admitted testimony of Parrott that was not relevant and (3) refused to give a limiting instruction as to Parrott's testimony. The following testimony is relevant to our consideration of this set of claims.

During trial, Parrott testified regarding her interview of the defendant. She testified as follows with respect to her explanation to the defendant of his reported conduct: "I told him that DE and DA have disclosed— that only DE was interviewed, and it was disclosed that while [the defendant] was living at his house, that he would sleep in the same bed as the boys, and that he was touching their butt, their private area, licking the

---

[5] The defendant also claims that the court's failure to give the supplemental instruction constitutes harmful error. "[W]hen an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the jury's verdict was substantially swayed by the error. . . . Accordingly, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Miguel C.*, supra, 305 Conn. 578–79. Having concluded that the court did not abuse its discretion in declining to give the supplemental limiting instruction to the jury, we necessarily conclude that the defendant has failed to demonstrate that the court's refusal to give the supplemental limiting instruction constitutes harmful error.

private area, licking and playing with the nipples, and DE explained peeing—that [the defendant] was peeing on them." Parrott testified that the defendant responded "that he did not remember doing anything to them," and, "well, if the boys said I did that, then maybe I did. I just don't remember." Defense counsel objected to the admission of Parrott's testimony about DE's disclosures on the grounds of inadmissible hearsay and relevancy. The court overruled that objection. The court reasoned that Parrott's statements to the defendant were not being admitted for the truth of the matter asserted, but rather for the limited purpose of putting the defendant's admissions into context. The court admitted the defendant's responses into evidence for consideration by the jury, reasoning that the responses were "admitted for the truth of the matter."[6]

## A

The defendant argues that the court improperly admitted Parrott's testimony about what DE disclosed because it was inadmissible hearsay. The specific statement that the defendant argues is inadmissible hearsay is that the defendant was "touching their butt, their private area, licking the private area, licking and playing with the nipples and . . . peeing on them."

As we have previously noted, our review of a trial court's admission of evidence based on an interpretation of the Connecticut Code of Evidence is plenary. See *State* v. *Miguel C.*, supra, 305 Conn. 571–72.

In the present case, the court admitted Parrott's testimony setting forth what DE told her, concluding that it was not offered for its truth, but to provide context

---

[6] Twice in his brief, the defendant characterizes his response, "well, if the boys said I did that, then maybe I did. I just don't remember." In the first instance, the defendant characterizes his response as "an ambiguous admission of a party under Conn. Code Evid. § 8-3 (1) . . . ." In the second instance, he characterizes it as a "general admission . . . ."

to the defendant's response to this statement. The court also determined that each of the allegations in the statement was supported by testimony from prior witnesses and, thus, was supported by evidence already in the record. Without knowing the statements made to the defendant that led to his response, "well, if the boys said I did that, then maybe I did. I just don't remember," his statement would have no meaning. Our review of the record demonstrates that the statement was admitted for the limited purpose of providing context to the defendant's response. We conclude, therefore, that Parrott's testimony did not constitute hearsay and was properly admitted by the court.

## B

The defendant also argues that the defendant's response to Parrott, "well, if the boys said I did that, then maybe I did. I just don't remember," was inadmissible hearsay that the court improperly admitted.[7] We disagree.

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness: (1) Statement by a party opponent. A statement that is being offered against a party and is (A) the party's own statement, in either an individual or representative capacity . . . ." Conn. Code Evid. § 8-3. "It is an elementary rule of evidence that an admission of a party may be entered into evidence as an exception to the hearsay rule. . . . In the criminal context, an admission is the avowal or acknowledgment of a fact or of circumstances from which guilt may be inferred, and only tending to prove the offense charged, but not

---

[7] As previously set forth in part II B of this opinion, in response to Parrott's statement to the defendant that DE had disclosed information about him "touching their butt, their private area, licking the private area, licking and playing with the nipples and . . . peeing on them," the defendant responded, inter alia, "well, if the boys said I did that, then maybe I did. I just don't remember."

amounting to a confession of guilt. . . . [S]tatements made out of court by a party-opponent are universally deemed admissible when offered against him . . . so long as they are relevant and material to issues in the case. . . . [T]he vast weight of authority, judicial, legislative, and scholarly, supports the admissibility without restriction of any statement of a party offered against that party at trial." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Ferguson*, 260 Conn. 339, 357–58, 796 A.2d 1118 (2002).

In the present case, the court admitted the defendant's statement as an admission of a party opponent under § 8-3 (1) (A) of the Connecticut Code of Evidence. Our review of the record demonstrates that in an out-of-court interview in the course of Parrott's criminal investigation of DE's statements, the defendant responded to DE's statement that he had been "touching their butt, their private area, licking the private area, licking and playing with the nipples and . . . peeing on them" by initially saying "that he did not remember doing anything to them" and thereafter saying, "well, if the boys said I did that, then maybe I did. I just don't remember." The defendant's latter statement was offered by the state at trial for the truth of the matter asserted and was claimed by the state as the defendant's admission with regard to DE's statements of the defendant's sexual abuse. The defendant's latter statement has the tendency to make the existence of the fact that the defendant engaged in the alleged conduct more probable than it would be without its admission. Therefore, the defendant's statement was both relevant and material to the issues in the case. The defendant's statement was offered for its truth, thereby constituting hearsay, but because it was a statement made by the defendant, it therefore falls within the hearsay exception for an admission by a party opponent. We conclude

that the statement properly was admitted by the court for consideration by the jury.

## C

The defendant also disputes the relevancy of the details of DE's allegations being included in Parrott's testimony regarding her statement to the defendant that led to his admission. "Upon review of a trial court's decision, we will set aside an evidentiary ruling only when there has been a clear abuse of discretion. . . . The trial court has wide discretion in determining the relevancy of evidence . . . and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Golodner*, 305 Conn. 330, 347, 46 A.3d 71 (2012). "Relevant evidence means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." (Internal quotation marks omitted.) Conn. Code Evid. § 4-1.

At trial, the defendant objected to Parrott's testimony as to her statement to the defendant that led to his concession that maybe he had done what DE claimed on the ground that the details in the statement were not relevant. After overruling the objection on the hearsay ground, the court further ruled that the statement was being admitted for the purpose of putting the defendant's response into context. The court's ruling demonstrates that the court concluded that the details in Parrott's statement were relevant to the jury's evaluation of the defendant's response. Our review of the record leads us to the same conclusion. Parrott interviewed the defendant for the purpose of investigating the victims' allegations and informed the defendant of the specific allegations. The defendant acknowledged

the allegations and responded, "well, if the boys said I did that, then maybe I did. I just don't remember," which the court deemed admissible for consideration by the jury. Thus, the specific allegations that Parrott relayed to the defendant were necessary to enable the defendant to understand the gravity of the victims' allegations and the import of any response by him, and were relevant for the jury to evaluate his response. We conclude, therefore, that the court did not abuse its discretion.

## D

The defendant finally argues that the court improperly refused to give a limiting instruction as to the portion of Parrott's testimony that contained the victims' allegations that the defendant was "touching their butt, their private area, licking the private area, licking and playing with the nipples and . . . peeing on them." As previously set forth in part I B 2 of this opinion, we review the court's instructions to the jury to determine whether it reasonably is probable that the jury could have been misled by the omission of the requested instruction. See *State* v. *Devalda*, supra, 306 Conn. 505–506.

Our review of the record demonstrates that the details of the victims' allegations in Parrott's statement to the defendant that led to his response, "well, if the boys said I did that, then maybe I did. I just don't remember," already were admitted into evidence. The victims had testified about the defendant touching their buttocks and penis area; touching DE's nipples; and about there being wetness in the bed that the defendant explained to them was either urine or drool. In overruling defense counsel's objection to Parrott's testimony that contained the victims' allegations, the court noted that the jury had heard testimony from the victims regarding the details contained in those allegations prior to Parrott testifying. Specifically, the court stated

that "all of these questions relate to testimony that has already been elicited directly from the children . . . ." The court also noted that instructing the jury that it could not consider the details in Parrott's statement for their truth likely would have confused the jury as to whether it could consider the victims' testimony for its truth. During a later discussion of defense counsel's objection to Parrott's testimony that contained the victims' allegations, the court further noted that no limiting instruction was given "because [the court] was not requested to give one." We conclude, therefore, that the court did not abuse its discretion by not giving a limiting instruction as to Parrott's testimony that contained the victims' allegations against the defendant.[8]

### III

The defendant's final claim on appeal is that the state engaged in prosecutorial impropriety by using DE's out-of-court statements, which were admitted for a limited purpose, as substantive evidence of the defendant's guilt. The defendant argues that the first instance of prosecutorial impropriety occurred when the prosecutor asked Nancy Eiswirth, a clinical psychologist, whether licking a penis was a "bad touch."[9] The defendant argues that the second instance of prosecutorial impropriety occurred when the prosecutor, in his closing argument, referred to Parrott's testimony, which directly referenced DE's allegations of sexual abuse against the defendant, as substantive evidence of the defendant's guilt. We are not persuaded that the prosecutor engaged in impropriety.

---

[8] The defendant also claims that the court's refusal to give a limiting instruction regarding Parrott's statement constituted harmful error. Having concluded that the court did not abuse its discretion in declining to give the jury a limiting instruction as to Parrott's testimony, we necessarily conclude that the defendant has failed to demonstrate harmful error. See footnote 5 of this opinion.

[9] At trial, Eiswirth was qualified as an expert in "[f]orensic interviewing in children."

"In analyzing claims of prosecutorial impropriety, we engage in a two step analytical process. . . . The two steps are separate and distinct. . . . We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial. . . . [T]he touchstone of due process analysis in cases of alleged[ly] [harmful] prosecutorial [impropriety] is the fairness of the trial, and not the culpability of the prosecutor. . . . The issue is whether the prosecutor's [actions at trial] so infected [it] with unfairness as to make the resulting conviction a denial of due process. . . . In determining whether the defendant was denied a fair trial . . . we must view the prosecutor's [actions] in the context of the entire trial. . . . An appellate court's determination of whether any improper conduct by the prosecutor violated the defendant's right to a fair trial is predicated on the factors established in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987)." (Internal quotation marks omitted.) *State* v. *Souza*, 125 Conn. App. 529, 534–35, 8 A.3d 1131 (2010). "[W]hen a defendant raises on appeal a claim that improper remarks by the prosecutor deprived the defendant of his constitutional right to a fair trial, the burden is on the defendant to show, not only that the remarks were improper, but also that, considered in light of the whole trial, the improprieties were so egregious that they amounted to a denial of due process." (Internal quotation marks omitted.) *State* v. *James*, 141 Conn. App. 124, 140, 60 A.3d 1011, cert. denied, 308 Conn. 932, 64 A.3d 331 (2013).

A

The defendant argues that the first instance of prosecutorial impropriety occurred when the prosecutor asked Eiswirth whether licking a penis was a "bad touch." The following additional facts are relevant to consider this argument.

During cross-examination of Eiswirth, the prosecutor asked: "Okay. And you said you had some concerns that there wasn't—you mentioned the good touch and bad touch. Is there any question, when a child says that an adult licked their penis, that that is a bad touch?" Defense counsel objected and requested that the jury and Eiswirth be excused for the discussion. The court excused the jury and Eiswirth. Defense counsel objected on the ground that "there's no facts in evidence as to licking of the penis." The court replied that "hypothetical questions are perfectly admissible to an expert witness . . . ." The court went on to state: "What I'm troubled by . . . is the particular example you chose first. Because the child testified that the defendant had contact with his penis by his mouth. He said, I think so, and then went on to describe it. He didn't use the term licking. The only time that term has been used has been by your expert, the state's expert, and I gave a curative instruction. So, I won't permit that particular example. If you want to ask it in a different way— is contact between an adult mouth and child's penis innocuous, I'll permit that because there's been general—you can use that general example, but not licking."

When the jury returned and Eiswirth resumed the witness stand, the court indicated that "the court has sustained the objection." The prosecutor then asked Eiswirth, "if a child discloses that an adult has had contact between that adult's mouth and the private area or penis or vagina of the child, is that something that requires clarification as to whether the child is aware of good touch or bad touch?" Eiswirth responded, "No."

The defendant argues that the prosecutor's question "whether licking a penis, as the victim said had occurred, was a bad touch," constitutes prosecutorial impropriety. This argument fails, however, because

defense counsel objected to the question and the objection was sustained. By objecting to the question, defense counsel alerted the court to the claimed impropriety and the court took measures to correct such claimed impropriety. Here, defense counsel objected to the question asked of Eiswirth, the court directed the prosecutor to reformulate the question and the prosecutor reformulated the question. Defense counsel did not object to the reformulated question or request that the question be stricken from the record. We conclude, therefore, that this claim of prosecutorial impropriety has no merit.

B

The defendant argues that the second instance of prosecutorial impropriety occurred when the prosecutor, in his closing argument, referred to Parrott's testimony, which directly referenced DE's allegations of sexual abuse against the defendant, as substantive evidence of the defendant's guilt. The following additional facts are relevant to our consideration of this argument.

During his closing argument, the prosecutor made the following relevant statements: "Parrott has testified under oath that, yes, this is what happened. I went there. I said, you know, did you lick his—DE's penis? Did you touch them in their private? Did you suck on the nipples? That those things that [Parrott] had confronted him—and that's exactly what you would expect a police officer in that jurisdiction to do, is to say, [s]o, what's your side of the story? Did you do these things that this kid says you did?

"Of course that's what she was asking him. And what's the defendant's testimony? Well, the defendant testifies, yeah, I did say—I didn't remember any of that stuff, but if the kid said I did it, I must've done it.

"He admits to saying that, but he says, oh, she wasn't talking about sex stuff. No, no. It wasn't anything to do with that."

Specifically, the defendant challenges the prosecutor's use of Parrott's testimony that included DE's allegations that the defendant licked his penis, touched their private and sucked on their nipples. In his closing argument, the prosecutor recited Parrott's testimony regarding how she presented DE's allegations to the defendant, and then the prosecutor recited the defendant's response to those allegations. Initially, Parrott's testimony that contained DE's statement was admitted into evidence for the nonhearsay purpose of providing context to the defendant's admission to Parrott. See part II A of this opinion. Our review of the record demonstrates that the prosecutor used the statement in his closing argument as a means of explaining the defendant's admission to DE's allegations of sexual abuse. The prosecutor did not present the statement in his closing argument as if it were substantive evidence of the defendant's guilt. The prosecutor's use of the statement in his closing argument was consistent with the limited use of the statement permitted by the court during Parrott's testimony. See part II A of this opinion. We conclude, therefore, that the prosecutor did not engage in impropriety by his use of this argument.

The judgment is affirmed.

In this opinion the other judges concurred.